## NEWELL *vs.* GREGG.

No one can become a *bona fide* holder of a promissory note, so as to shut out
a valid defense by the maker, when such holder takes it after, by its terms,
money is past due upon it.

Where a note is for the payment of money at a specified time, with interest
payable annually, the payment of interest *annually* is as much a part of the
agreement as the promise to pay the principal. It is a portion of the debt,
and if, when the note is sold to a third person, by the payee, a year's interest
is past due, the note is then dishonored.

When the instrument furnishes evidence that the written promise to pay has
been broken, a party taking the same takes it with a warning that the maker
may have some defense.

Where the holder of a promissory note which is invalid in his hands, by reason
of its having been already paid, wrongfully transfers it, before maturity, to a
*bona fide* holder, who enforces payment thereof, an action will lie against
such original holder, by the maker, to recover back the amount.

APPEAL from a judgment entered upon the decision
of a referee.

The complaint, in substance, is that the plaintiff gave
his note for $200 to one John R. Gregg, payable to him
or bearer, two years after date, with annual interest; date
of note April 6, 1864; that he paid the note in full to
Gregg, prior to January, 1865, before it became due; that
Gregg died, and the note came into the hands of the de-
fendant, as executor; and that he, with notice and knowl-
edge of the payment of the note, did unlawfully and
fraudulently, and with intent to compel payment of the
note by the plaintiff, a second time, sell and transfer it
before it became due, to one Lewis B. Grant, a *bona fide*
owner, &c.; and that the plaintiff, when the note became
due, was compelled to pay, and did pay it to Grant, &c.
The answer was a denial.

The referee found as facts: 1st. That the plaintiff paid
to Gregg, in October, 1864, $200 to apply on the note.
2d. That the note came into the hands of the defendant,
as executor of Gregg, before the principal of the note, by
its terms, became due, and that he sold and transferred it

to Grant for a valuable consideration. 3d. That the defendant, before selling the note, had notice of the payment to Gregg of the $200. 4th. That Grant had no notice. That he paid cash $166.23, in merchandise $1.75, a previous indebtedness of $36.72. 5th. That the plaintiff was compelled to pay, and did pay the note to Grant. Conclusion, that the plaintiff was entitled to recover $168.28, with interest from July 15, 1865, in all amounting to $190.66.

*O. W. Johnson,* for the plaintiff.

*Warren & Morris,* for the defendant.

*By the Court,* MARVIN, J. The point is made that Grant was not a *bona fide* holder of the note, and that the defendant should have resisted the claim made upon him by Grant. A year's interest was past due upon the note when, in July, 1865, Grant bought the note, and his attention was called to the fact. Was not dishonor attached to this note? The counsel for the plaintiff claims that though Grant may not have been a *bona fide* holder of the note, as to the interest past due, he was as to the principal not yet due; and that the referee has allowed only the amount of the principal. Grant then paid for the note, cash $166.53, merchandise $1.75, a previous idebtedness of $36.72. Is the position of the counsel sound? The agreement was, two years after date, to pay $200, with interest payable annually. The payment of interest *annually* was as much a part of the agreement as the promise to pay the principal. It was a portion of the debt. The entire debt was evidenced by one written promise to pay, and this promise was broken when Grant purchased the note. Was not such note dishonored? It so seems to me. Suppose the note had been payable in installments, and one or more of the installments had been past due,

Newell *v.* Gregg.

could Grant have purchased the note and maintained his rights as a *bona fide* holder, as to the installments not due, against a defense which the maker could have made against the payee? I think not. It seems to me that when the instrument furnishes evidence that the written promise to pay has been broken, the party taking the note takes it with a warning that the maker may have some defense. It is settled that when a note is payable by installments, or if the interest is payable periodically, an action may be brought for any installment, or any interest, as it becomes due. (2 *Pars. on Notes and Bills,* 463. 2 *Mass. R.* 283. *Id.* 568. 3 *id.* 221.)

For the purpose of charging an indorser of a note payable in installments, there should be a demand of each installment as it becomes due, and a notice of non-payment. (*See* 1 *Pars. on Notes and Bills,* 374.) These authorities show that the note is dishonored, and the indorser, if demand is not made and notice given, will be discharged, as to such installments, but not as to future installments. The maker's liability will not be affected by the neglect to demand payment, &c. of the installment, but his neglect to pay is a dishonoring of his promise, and is a warning to all subsequent takers of the note. He may have neglected to pay because he had a defense, or he may have paid the whole note. In short, it seems to me that no one can become a *bona fide* holder of a note, so as to shut out a valid defense by the maker, when such holder takes it after by its terms, money is past due upon it.

As to the remaining question, understood to be the question mostly considered upon the trial, I have but little difficulty. The question is whether an action can be maintained by the maker of a note transferred to a *bona fide* holder, the note void or not enforceable in the hands of the payee, the maker having been compelled to pay it? No case precisely in point is cited, and I have found none. The counsel refers to *Cowen's Treaties, vol.* 1, *p.* 376.

The author says: "If I hold a note or bill of exchange against you, which is void in my hands for want of consideration, illegal consideration or other cause, but I indorse or otherwise transfer it, before due, so that it is collected against you, I am accountable in this action for the damages. But such transfer must have been before the note or bill was due; for otherwise your remedy is by a defense against the first suit upon it." Though the learned author has cited no authority in support of the text, I do not hesitate to adopt it as sound law, upon principles that are constantly recognized and applied. In the hands of the payee or holder, the note or paper is valueless, and so long as it remains in his hands it cannot harm the maker. The latter, knowing these facts and for the purpose of rendering the maker liable, transfers the paper to one who, by the law merchant, can enforce it, and payment is enforced. This is a fraud upon the maker, and a fraudulent use of the law which makes commercial paper collectable by a *bona fide* holder. In principle I think the case of *Decker* v. *Mathews*, (2 *Kern.* 313,) is in point. In that case it was decided by the Court of Appeals that the maker of a negotiable note can maintain an action for its conversion, against a person who, before it has any legal inception, wrongfully negotiates it to a *bona fide* holder for value. It was said, in one of the opinions, in substance, that the note in the hands of any one not a *bona fide* holder, was without value; that no action could have been maintained upon it; that the defendant took the note, and by his wrongful act caused it to become valuable in the hands of a *bona fide* holder, and he received as the fruits of his wrongful act the full amount of such value, and made the plaintiff liable therefor; and that therein was the gravamen of the action.

In the present case the note was invalid in the hands of the defendant, in case it had been paid; and the defendant, by wrongfully transferring it to a *bona fide* holder,

enabled the latter to enforce payment. If this were the only question in the case, I should not hesitate to advise an affirmance of the judgment; but, for the reason before stated, I think the judgment should be reversed, and there should be a new trial.

The other members of the court expressed no opinion as to the finding being against evidence, but concurred upon the other two questions.

New trial granted.

[ERIE GENERAL TERM, May 4, 1868. *Daniels, Marvin* and *Davis,* Justices.]