HART vs. STICKNEY and others.

PROMISSORY NOTE: LAND CONTRACT: EVIDENCE. *(1) Note dishonored by nonpayment of interest. (2) When contract for sale of land rescinded, so as to extinguish note for purchase money. (3) Whether party to note may testify that he was a minor when he executed it.*

1. One who takes a promissory note, which shows that interest on the principal sum therein named is past due and unpaid, takes it subject to all equities between the original parties.
2. If the vendee of land under an executory contract abandons the possession, and the vendor resumes possession, without any agreement between them for a rescission of the contract, it is not extinguished, and the vendee's notes for the purchase money continue to be valid as between the original parties. So *held*, where the defense that the contract had been rescinded was set up only by the *sureties* upon the note.
   [3. *It seems* that one sued as a party to a contract may testify in his own behalf that he was a minor at the time of its execution. But the point is not decided.]

APPEAL from the Circuit Court for *Milwaukee* County.

Action upon a promissory note of the defendants, George Farrow, *James S. Stickney* and *Edward Coulthard*, for $1,000, dated May 1, 1873, running to Thomas W. Hart or order, payable two years from date, with interest at seven per cent., payable annually. Plaintiff, *Thomas B. Hart*, claims as indorsee for value, before due.

The answer of *Stickney* denies that the note was transferred to the plaintiff for value before due, and alleges that it was put into his hands after settlement and payment thereof, with knowledge on his part of such settlement and payment, and for the purpose of enabling him to bring suit thereon for the benefit of the payee. It then further alleges that about the date of the note, George Farrow, one of the makers, purchased certain land of the payee; that the note was given for part of the purchase money; that *Stickney* and *Coulthard* signed it merely as sureties; that in June, 1874, Farrow settled and adjusted all his indebtedness to the payee, and it was then and

there agreed between said payee and Farrow that the latter should reconvey to the former said land in payment of the indebtedness for the purchase money, and such reconveyance was accordingly made and received in full payment of such indebtedness, including the note in suit, by reason whereof such note was paid and discharged.

The answer of *Coulthard* raises an issue as to the indorsement of the note to plaintiff before due and for value; and also alleges that said defendant signed the note as a surety only, without consideration, and that at the time of making it he was under the age of twenty-one years.

The defendant George Farrow did not answer.

The questions which arose upon the rulings of the court as to evidence, and upon the giving and refusal of instructions, will fully appear from the opinion.

The answering defendants had a verdict and judgment; and the plaintiff appealed.

For the appellant, a brief was filed by *Rogers & Hover*, and the cause was argued orally by *Thomas Hover*. They contended, among other things, 1. That even if the contract for the sale of the land gave the vendee the right of possession, the mere act of the vendor in resuming the possession without the vendee's consent would not rescind the contract, and so long as the vendee's right to demand a conveyance of the land remains, there is no failure of the consideration for the note, and the sureties have no defense to it. 1 Parsons on B. & N., 203; 2 id., 536–7; *Spiller v. Westlake*, 2 B. & Ad., 155; 14 East, 486; 41 Barb., 420; 5 Cow., 494; 25 N. Y., 306; 13 Vt., 205. It has indeed been held that where the vendor, after condition broken, enters into possession and refuses to accept further payments when tendered, his acts amount to a rescission of the contract on his part, and the vendee can so treat them. But here the vendor entered into possession before condition broken, and, as he claims, by agreement; he has never refused payment, nor has payment ever been ten-

dered; on the contrary, he is now in court asking payment according to the terms of the contract; there is no proof that his possession is in any degree inconsistent with the contract; and the vendee does not appear and object, nor is there any evidence that he claims a rescission. The vendor's entry before condition broken, if made without consent, was a mere trespass. If made under an agreement between the parties, as was claimed in this case, the rights of the parties under the land contract could not be affected, unless it was expressly so agreed. Whether it was so agreed, was a question for the jury; and it was error to prevent them from passing upon it. 2. That the doctrine that a note is dishonored if an installment of interest is due by its terms, and unpaid, is not sustained by the authorities either in this country or England, no court of last resort having ever affirmed such a rule. 3. That the testimony of the defendant *Coulthard* that he was a minor, was inadmissible, being necessarily mere hearsay, and his sources of information, if reliable, being the best evidence. Tyler on Inf. & Cov., 213; *Weaver v. Stokes*, 1 Mees. &. W., 203; 1 Tyrwh. & Gr., 512.

For the respondents, a brief was filed by *Jenkins, Elliott & Winkler*, and the cause was argued orally by *Mr. Jenkins*. They contended, among other things, 1. That the court properly refused to instruct the jury that the note was in full force unless the transfer of the possession of the land to the vendor was accompanied by " an *express* agreement that the contract should be at an end, and the vendee released from its obligations." If an end of the contract and release from its obligations was contemplated by the parties, and the surrender of the land was made and accepted with that view, that was sufficient, although no *express* mention was made of it. 2. That the court also properly refused to instruct the jury that " if the vendee abandon possession of premises held by him under an executory contract of sale, the taking possession by the vendor does not of itself amount to a release from the obliga-

tions of the contract;" because, even if good in law, it was a mere abstract proposition, not applicable to the actual facts of the case. 3. That there was no error in that part of the general charge which related to the same subject. The substance of it was, that in the case of a land contract under which the vendee is entitled to possession, if the vendor, without any contract or arrangement with the vendee, repossess himself of the land, he thereby, so far as he can, puts an end to the contract, and cannot, holding the land, maintain suit to recover the purchase price. (1) There can be little doubt of the general correctness of this position. If the vendor reënters without contract or arrangement, he must be presumed to do so under a claim of right; and if there has been a breach of the contract by the purchaser (as by failing to pay the interest), that breach must be his claim of right, and his act betokens an unmistakable intention to rescind. But he certainly cannot rescind and take the land, and, while enjoying the rents, declare himself a mere trespasser, and proceed to collect the purchase money. Generally, where one fails to perform his part of the contract, the other may treat it as rescinded (2 Parsons on Con., 678; Chitty on Con., 1090; *Fletcher v. Cole*, 23 Vt., 114; *Dwinel v. Howard*, 30 Me., 258); and certainly where one party has assumed to rescind, it does not lie in his mouth to deny his right to do so if the other party choose to accept the situation. (2) But it is unimportant whether in this part of his remarks the judge stated the law correctly or not. This was a mere discussion of general principles; was not given to the jury for their guidance; and preceded the charge proper. It suggests what the effect would have been if Hart had retaken possession "without any agreement between himself and the purchaser;" but it was not claimed by either party that such had been the case, nor did the charge submit the cause to the jury on the theory that such might have been the case. The defendants claimed that the vendor took possession under the agreement alleged in the

answer; while the plaintiff claimed that he took possession under a different agreement; and the only issues which the judge proceeded to submit were, first, whether plaintiff was protected as a *bona fide* holder of the note; and second, what the agreement was between the vendor and vendee.    3. That if part of the interest was past due when plaintiff purchased the note in suit, it was dishonored, and plaintiff took it subject to the equities between the original parties.    The effect of the note is the same as if it promised, in terms, to pay $70 one year from date, and $1,070 two years from date (*Butler v. Wagner*, 35 Wis., 54; 2 Parsons on B. & N., 394); and such a note is dishonored when one installment is unpaid.    *Vinton v. King*, 4 Allen, 562; 1 Parsons on B. & N., 374.    The rule here contended for is fully maintained in *Newell v. Gregg*, 51 Barb., 263; *First Nat. B'k v. Scott County Comm'rs*, 14 Minn., 77.    4. That the testimony of *Coulthard* as to his age was properly admitted.    It was founded upon repute in the family, as well as a chancery record; and the fact that it was necessarily hearsay, does not make it objectionable.    1 Greenl. Ev., §§ 103, 134.

COLE, J.    The main questions in this case arise upon exceptions taken to the refusal of the circuit court to give instructions asked on the part of the plaintiff, and on exceptions to certain portions of the charge.    The first question to be considered is, Did the court state the law correctly as to what would amount to a dishonor of the note, so as to subject it to equities existing between the original parties?    Upon that point the circuit court in substance held, that where a note is for the payment of money at a specified time, with interest payable annually, and the note is sold by the payee to a third person when a year's interest is past due and unpaid, the law will construe that the note is dishonored — the default in the payment of interest will be sufficient to put the purchaser on his guard to see if there is anything wrong about the note.

The evidence made this charge applicable, if sound as a proposition of law; for it is an admitted fact that a year's interest had been due on the note for nearly eleven months, when the plaintiff purchased it of the payee. The case most directly in point in support of the view of the circuit court, is *Newell v. Gregg*, 51 Barb., 263, to which we were referred on the argument. It is not necessary to state the facts of that case. It suffices to say that the court held that when a note was given for the payment of $200 two years from date, with interest payable annually, the payment of the interest when due was as much a part of the agreement as the promise to pay the principal; that it was a portion of the debt which was evidenced by one written promise to pay; that when the instrument furnishes evidence that the written promise to pay has been broken, a party taking it has notice that the maker may have a defense. The principle of this decision commends itself to the good sense of everyone, and we think it is sound. For the fact that interest on the note is due and unpaid, is of equally pointed character to show dishonor as the nonpayment of an installment. In *Vinton v. King*, 4 Allen, 562, the court decided that a note payable by installments was overdue when the first installment was overdue and unpaid; and that one who took the note afterwards, received it subject to all equities between the original parties. The court say: "The circumstance that a note is overdue, makes it incumbent on the party receiving it to satisfy himself that it is a good one; and if he omit so to do, he must stand in the situation of him who was holder at the time it was due." See, also, Parsons on Notes and Bills, 374. We therefore think, upon this branch of the case, that the court was right in charging, upon the admitted facts, that the note was deemed to be dishonored when taken by the plaintiff, and that it was open to the defense set up in the answer. And this view disposes of the exception taken to the refusal of the court to give the second special instruction of the plaintiff, which was to the

effect that if he had no knowledge of any defense to the note at the time it was purchased, a recovery could be had upon it. The note in question bore date May 1, 1873, was payable to the order of Thomas W. Hart two years from date, with seven per cent. interest, the interest payable annually. The plaintiff purchased the note March 22, 1875, and the first year's interest was then unpaid. On these admitted facts, the plaintiff could not be said to be an innocent purchaser.

The defense to the note set up in the answer was, that George Farrow, the principal maker of the note, purchased a farm of the payee, the note being given at the time in part payment of the purchase money; that in the month of June, 1874, Farrow settled and adjusted all his indebtedness with the payee, and reconveyed the land purchased in payment of such indebtedness, which included this note; and that the land was accepted by the payee in discharge and payment thereof. There was evidence offered on the trial on the part of the defendants, which tended to establish this defense, but which was contradicted by testimony given on the other side. It appeared from the testimony that Farrow went into possession of the land purchased, and abandoned or surrendered the possession to the vendor in June or July, 1874. In view of this evidence, the court was asked by the plaintiff to instruct the jury, that if they found that the possession of the premises was transferred to the vendor without an express agreement that the contract was to be surrendered and at an end, and the vendee released from its obligations, then the defendants, who were sureties, were liable on the note, and there could be a recovery. Also to charge that if the vendee abandoned possession of the premises held by him under an executory contract of sale, the taking possession by the vendor would not of itself amount to a release from the obligations of the contract. The court refused these requests, but charged that if, without such agreement, the vendor took possession of the land, he rescinded the contract, and the parties were

Hart vs. Stickney and others.

restored to their original position, subject to the right of the vendee to reinstate himself in equity; or in other words, that if the vendor went and took possession of the premises without any contract or arrangement with Farrow, this would amount to a rescission of all the contracts in relation to the land, and to a payment and settlement of them by his taking possession.

It seems to us this charge was erroneous, and that the instructions asked were applicable to the testimony produced by the plaintiff. We cannot think any such legal consequence as the learned circuit judge stated, would follow from the mere act of the vendor taking possession of the premises sold. It was doubtless entirely competent for the parties to rescind the contract, and make an arrangement for the surrender of the premises and discharge of the note. But that, without any contract or arrangement of the kind, the mere act of taking possession by the vendor would operate to rescind the contract and discharge all obligations, is a proposition which we think cannot be maintained upon authority. We have examined the cases cited by the defendants' counsel on this point, and they do not sustain the charge of the court. We can but think the charge erroneous, and that the instructions asked should have been given. It is said, if the vendor repossess himself of the land sold, he puts an end to the contract. That does not necessarily follow. Even the court below held that the rescission would not result from that fact alone, but that the vendee might reinstate himself by an action in equity. But the better answer is, that the contract could not thus be rescinded by the vendor alone. The mere fact that the vendor repossessed himself of the land sold without any agreement or consent of the vendee, would not extinguish the contract, or relieve the vendor from the obligation to convey on a full compliance with the conditions of the contract by the vendee. This, we think, is very clear. The vendor could foreclose the

equity of the vendee by action, or the contract might be rescinded by the agreement of the parties concerned.

In this case the defendant *Coulthard*, who signed the note as surety, interposed the defense of infancy. On the trial, he was offered as a witness to prove his defense, but was objected to on the ground that he was an incompetent witness to prove his own age. The court, however, overruled the objection, and permitted the witness to testify that he was about twenty years and two months old when he signed the note. The same question may arise on the retrial of the case, and therefore, without definitely deciding the point, we will merely say we are inclined to think the evidence was properly admitted. The defendant was a competent witness in his own behalf under the statute; and why should he not be permitted to testify as to his age when he signed the note? What rule of law excludes him as to that fact? His evidence might be of little value, and probably ought to be taken with a good deal of allowance. But it seems to us it was competent to go to the jury, who would attach to it such credit as it was entitled to receive. It was a matter of repute in the family when the defendant was born, and though he could not have any personal knowledge of his birth, yet he might testify as to his age as he had learned it from his parents and relatives. It would seem to come within the rule that a surviving member may testify as to general repute in the family. 1 Greenl. Ev., §§ 103, 134. We do not think there is anything in the case of *Weaver v. Stokes*, in 1 Tyrwhitt & Grang., 512, in conflict with the views above indicated. But, without absolutely deciding the question, we reverse the judgment on account of the error on the other point.

*By the Court.* — The judgment of the circuit court is reversed, and a new trial ordered.