MERCHANTS NATIONAL BANK, Appellant, v. GOTTLIEB BRISCH et al., Respondents.

Springfield Court of Appeals, April 3, 1911.

1. CONTRACTS: Fraud: Evidence: Varying Written Contract. Although it is a general rule that a party when sued upon a written contract cannot admit that he signed it and at the same time deny that it expresses the agreement he made; yet a person is in no position to invoke this rule when, having knowledge that another is ignorant and unable to take care of himself, takes an undue advantage of his condition to procure a contract from such person.

2. FRAUD: Contracts: Getting Party Intoxicated: Bills and Notes: Consideration. In an action on notes which had been given for the purchase price of a threshing machine outfit, and at the same time the notes were executed a contract was signed by defendants for the purchase of said machinery, it is *held* that if defendants proved to the satisfaction of the jury that they were ignorant foreigners, unable to read and understand but little of the English language, and that the agent of the machinery company by the use of intoxicating liquors further impaired their ability to take care of themselves, and while they were in such condition, procured their signatures to the contract which they did not understand, and which, on account of the condition of their minds brought about by the agent's acts, they could not understand, and which did not contain the terms of the agreement as actually made between the parties, they would not then be liable on such contract, and having refused to take the machinery there would be no consideration for the notes.

3. ————: ————: ————: Duty of Ignorant Party to Have Contract Read Not Applicable. Ordinarily an ignorant person unable to understand a contract he is about to execute should before signing it, have some who is available, read and explain it to him, but this rule is not applicable in favor of the other party to the contract, who gets the ignorant party intoxicated so that his signature might be the more easily obtained.

4. BILLS AND NOTES: Failure of Consideration: Innocent Purchaser: Burden of Proof. Where a note was executed prior to the taking effect of the new negotiable instrument law, the burden is upon the defendants to prove, in order to defeat the note for failure of consideration, that plaintiff was not an innocent purchaser for value before maturity of the note and without notice.

5. ————: Innocent Purchaser: Sufficiency of Evidence. As tending to prove that the plaintiff was not an innocent purchaser of a note which had been given for the purchase of a threshing machine, under a contract subsequently avoided for fraud, it was shown that the president of the machine company was the president of plaintiff's company; that the note was delivered on an agreement of indemnity by the seller against loss in case of non-payment; that no inquiry was made by the purchaser of the financial standing of defendants; that the note was sold in Ohio and defendants lived in Missouri and were strangers to plaintiffs; that one year's interest was long past due and unpaid on the note and had been included in computing the value of the note. *Held*, that the note carried on its face evidence of its dishonor and that the evidence was sufficient to show that plaintiff was not an innocent purchaser.

Appeal from Phelps Circuit Court.—*Hon. L. B. Woodside,* Judge.

AFFIRMED.

*Jones Bros.* and *C. H. Shubert* for appellant.

(1)  The question in this case to be determined is, was the plaintiff an innocent purchaser for value before maturity without notice of any fraud in the inception of the contract, and if so then it is entitled to recover. Jennings v. Todd, 118 Mo. 296.    (2)    There was no fraud in the procurement of the note sued on.  Bank v. Brisch, 140 Mo. App. 246.    (3)    The consideration of negotiable paper in the hands of a bona fide holder for value before maturity cannot be inquired into, mala fides alone can open the door to such inquiry, even gross negligence is not sufficient but actual notice of facts which impeach the validity of the note must be brought home to the holder.  Johnson v. McMurray, 72 Mo. 278; Mays v. Robinson, 93 Mo. 114.    (4)    There was absolutely no evidence on which the jury could find that the plaintiff had any knowledge whatever of any failure of consideration in the notes sued upon.  Bank v. Wells, 98 Mo. App. 573.    (5)  The defense in this case was the failure of consideration of the note sued upon and that the plaintiff was not a bona fide holder for value before maturity of said note, and the burden of proof is on the defendant in this case.  The evidence was all one way and tended to show that the plaintiff was a bona fide holder for value before maturity.  There being a failure of evidence in this respect on behalf of the defendants, the court should not have given instructions 1 and 2 for the defendants.  Jobes v. Wilson, 140 Mo. App. 281; Kennedy v. Railway, 128 Mo. App. 299.    (6)    Notice imputed to the officers of Russell & Company cannot be imputed to plaintiff.  Bank v. Tinsely, 11 Mo. App. 498; Bank v. Lovitt, 114 Mo. 519; Bank v. Froeman, 129

Mo. 427.   (7)   To permit a party when sued upon a written contract, to admit that he signed it but deny that it expressed the agreement he made, would absolutely destroy the value of all negotiable instruments.   Bank v. Wells, 98 Mo. App. 573; Crim v. Crim, 162 Mo. 544.

*Watson & Holmes* for respondents.

(1)   The court did not err in refusing appellants instructions 1 and 2.   The question of good faith is a question for the jury.   Hugumin v. Hines, 97 Mo. App. 352; Gannon v. Gass Co., 145 Mo. 502; Seehorn v. Bank, 148 Mo. 256.   (2)   The court did not err in admitting parole evidence of the contract.   The defendants having alleged in their answer that the contract which resulted in the execution of the note sued upon, was procured from them by the fraudulent representations of plaintiff's agent, parole evidence was admissible to show this fact.   Smith on Law of Fraud, sec. 265.

GRAY, J.—This is a suit on a note for $630, bearing interest at the rate of six percent per annum, payable annually, dated June 12, 1905, and due on or before the 1st day of October, 1907, signed by the defendants and payable to Russell & Company, and by that company endorsed to plaintiff on the 9th day of February, 1907.

The cause is on its second visit to this court.   By reference to our former opinion in the 140 Mo. App. 246, 124 S. W. 76, the nature of the case will be ascertained.

At the last trial, the alleged written contract for the purchase of the machinery for which the note was given, was offered in evidence.   It is dated April 26, 1905, and is an order signed by the defendants to Russell & Company, to ship about June 1st, 1905, a threshing outfit to the defendants, and providing that on the arrival of the machinery, the defendants should deliver a second-hand traction engine, and also execute three

notes for $650 each, coming due October 1, 1905, 1906 and 1907. The contract also contained a clause that defendants should execute a deed of trust upon three hundred and twenty acres of land owned by them to secure the payment of the notes.

The defendants proved, over the objection of plaintiff, that on the day the contract was signed, they notified the agent of Russell & Company that they desired the machine to be shipped June 1st, to the town of Russell, in the State of Kansas. The defendants also proved, over the objection of the plaintiff, that the machine was to be shipped from St. Louis, and the agent guaranteed the freight would not be over one hundred dollars.

The defendants went to Kansas to receive the machine, but it did not come until sometime in July, and when it did, the conditions of delivery sent by the shipper were such that in order to get possession of the machine, defendants were required to execute a deed of trust upon the three hundred and twenty acres of land, and to pay freight on the machine from Ohio to Kansas, amounting to about $375. The defendants refused to execute the mortgage or to pay the freight, and therefore, did not receive the machine.

The appellant has filed an abstract of the record, containing a portion of the testimony in narrative form. In appellant's brief, however, the statement is found that defendants offered testimony to the effect that they were drinking at the time the contract was signed, and did not know what it contained, and that they also undertook to show that they could not read or write the English language.

The testimony tends to prove that Russell & Company were manufacturers of threshing machines in Ohio, and that in 1905, one W. H. Mitchell, as their agent, visited the home of the defendants with the view of trading them a new threshing machine for an old machine they had; that in order to get the defendants in

the notion of buying, he always took with him one or
two bottles of whiskey; that finally the contract and the
three notes above mentioned were signed by the defend-
ants.    The notes were dated June 12, 1905, but all the
testimony shows they were signed on the day the con-
tract was executed.    When the contracts were signed,
the defendants were drinking, and they claim that on
account thereof they did not know what was in the con-
tracts, and did not know the clause was therein to the
effect that they were to pay all the freight, or were to
give a deed of trust on their land.    On the contrary, they
claimed they were to only pay freight from St. Louis
and not exceeding one hundred dollars.

The general rule is, that a party, when sued upon
a written contract, cannot admit that he signed it and
deny that it expresses the agreement he made.    [First
National Bank v. Wells, 98 Mo. App. l. c. 573, 73 S. W.
293.]    This, however, is only the general rule.    Where a
person had knowledge that another is ignorant and un-
able to take care of himself in a deal, and used any
advantage to procure a contract from such person, he is
in no position to invoke the rule that the party having
signed it must be held to have agreed to all of its terms.
[McGhee v. Bell, 170 Mo. 121, 70 S. W. 493; Hendricks v.
Vivion, 118 Mo. App. 417, 94 S. W. 318.]

In this case, if the defendants proved to the satis-
faction of the jury that they were ignorant foreigners,
unable to read or understand but little of the English
language, and that the agent of the machinery company
visited them, and by means of the use of intoxicating
liquors, further impaired their ability to take care of
themselves, and while they were in such condition, pro-
cured their signatures to a contract which they did not
understand, and which, on account of the condition of
their minds brought about by his acts, they could not
understand, and which did not contain the terms of the
agreement as actually made between the parties, they

should not be liable on such contract to the principal of such an agent.

The appellant claims, however, that the defendants were not alone when the contract was made, but some of their friends were present, and they could have ascertained what was in the contract by having it read to them. This, of course, would be true if the defendants were duly sober at the time, but if the agent got the defendants intoxicated, he must have done so for the purpose of getting them to execute the contract, and if they were intoxicated, it is not strange they did not think to have the contracts read by the others present. As said by the Court of Appeals, in Hendricks v. Vivion, supra: "When the complaint comes from the weak, the helpless, the unfortunate and ignorant, the entire aspect is changed and the law affords them protection, for the very reason that they are not able to protect themselves and cannot be considered at fault in becoming the victim of the wrongdoer."

If the agent of the threshing machine company verbally agreed with the defendants to ship the machine from St. Louis and deliver it at Russell, Kan., June 1st, and that the freight would not be more than one hundred dollars and then when they became intoxicated, he presented the contracts to carry out their agreement and they signed the same, there was no such meeting of minds on the terms of the written contract, as the law requires.

There are some physical facts in connection with the case which support the defendants' theory. The notes were executed on the day the contract was signed in April, and yet they bear date June 12th. The written contract provides the notes are to be executed when the machine is delivered. The contract also provides that the defendants shall notify the machine company when and where the machine is to be shipped. That notice according to all the evidence was given on the day the contract was made, and there is nothing to show that

the parties ever conferred again. The defendants testified it was then and there agreed that the machine was to be shipped from St. Louis to Russell, Kan., and delivered June 1, 1905. If the notes were to be executed according to the contract, then they should not have been executed until the machine was delivered, and no reason was assigned why defendants should have paid interest on the notes for nearly a month before the machine was delivered.

When the defendants offered the testimony showing that they could not well understand the English language, and that the machine company's agent had furnished them whiskey until they were under its influence, and that after they had agreed upon the terms of their contract an instrument was presented purporting to contain the terms agreed on, and that the terms actually agreed on were silent as to a deed of trust, and that defendants were to pay the freight from the factory, and that the defendants signed the contract while in the condition just stated, and that when the machine was shipped to Kansas, the defendants were denied the possession thereof, unless they paid all the freight and executed the deed of trust, and that they refused to take the machine on that account, and have never had possession of it at any time, we think such facts were sufficient to take the case to the jury on the question of failure of consideration.

As the note was executed prior to the taking effect of our new negotiable instrument law, the burden was upon the defendants, to prove, in order to defeat the note for failure of consideration, that plaintiff was not an innocent purchaser for value before maturity and without notice. [Bank v. Rominee, 136 Mo. App. 57, 117 S. W. 104; Hamilton v. Marks, 63 Mo. 167; Bank v. Brisch, 140 Mo. App. l. c. 251, 124 S. W. 76.]

The appellant claims there was no testimony tending to prove that plaintiff was not an innocent purchaser for value before maturity without notice. The testi-

mony upon that issue consists of the following: The president of the machine company was the president of the plaintiff's company, and the note was delivered on an agreement of indemnity by the seller against loss in case of non-payment. There was no inquiry made by the purchaser of the financial standing or ability of the defendants to pay the note. The note was sold and delivered in Ohio, and the defendants were living in the state of Missouri, and absolute strangers to the plaintiff. In addition to the above, the first year's interest on the note was long past due and unpaid. The interest was payable annually, and the year's interest became due June 12, 1906, and the note was sold to the plaintiff in February, 1907. The note, therefore, carried on its face evidence of its dishonor. [Chouteau v. Allen, 70 Mo. l. c. 340; McCorkle v. Miller, 64 Mo. App. l. c. 156; Bank v. Forsyth, 67 Minn. 237, 69 N. W. 909, 64 Am. St. Rep. 415; Vinton v. King, 4 Allen 562; Newell v. Gregg, 51 Barb. 263; Bank v. County Commissioners, 14 Minn. 77, 100 Am. Dec. 194; Bank v. Kirby, 108 Mass. 497; Morton v. New Orleans, etc., 79 Ala. 590; Citizens Savings Bank v. Couse, 124 N. Y. S. 79, 68 Misc. Rep. 153.]

The plaintiff knew when it purchased the note, that the annual interest had not been paid, as the amount of the same was included in computing the value of the note.

There are some other points raised in appellant's brief, but they are immaterial, and the two grounds assigned for reversal are that there was no testimony tending to prove that the consideration for the note had failed or that plaintiff was not an innocent purchaser for value before maturity. We have decided these two points against the appellant, and will affirm the judgment. All concur.