## OUTCULT ADVERTISING COMPANY, Appellant, v. W. M. BARNES, Respondent.

**Springfield Court of Appeals, January 19, 1914.**

1. **CONTRACTS: In Writing: Oral Agreements Merged in.** All prior contemporaneous verbal agreements are conclusively presumed to be merged and embodied in a written agreement.

2. ————: ————: **Complete: Parol Evidence Cannot Alter.** A written contract purporting to be complete on its face cannot be varied by parol evidence.

3. ————: ————: **No Fraud in Obtaining Signature: Binding.** Where no fraud or artifice was practiced to induce a party to sign a contract he cannot avoid the contractual obligation by claiming that it did not express the real agreement entered into.

Appeal from Douglas County Circuit Court.—*Hon. John T. Moore,* Judge.

REVERSED AND REMANDED *(with directions)*.

*J. S. Clarke* for appellant.

(1) The written contract was complete within itself and purported to contain the entire agreement. Parol evidence was inadmissible to take from or enlarge same. Turner v. Railroad, 20 Mo. App. 632; Harkness v. Briscoe, 47 Mo. App. 196; Williams v. Stifle, 64 Mo. App. 138; Reed v. Nicholson, 37 Mo. App. 646; Bank v. Brisch, 154 Mo. App. 631; Robinson &

Co. v. Ligon, 146 Mo. App. 634; Van Studiford v.
Hazlett, 56 Mo. 322; Reigart v. Coal and Coke Co., 217
Mo. 142; Zeller v. Ranson, 140 Mo. App. 220; Breeders
Co. v. Wright, 134 Mo. App. 717. (2) Defendant had
at hand all the means whereby he could have informed
himself of all the contents of the contract in question.
The mere fact that he neglected to read and inform
himself of its contents is no ground for avoiding its
legal effect. Sanderson v. Voelcker, 51 Mo. App. 328;
Dun v. White, 63 Mo. 181; Wade v. Ringe, 122 Mo. 322;
Lewis v. Brookdale, 124 Mo. 328; Mateer v. Railroad,
105 Mo. 329; Bradford v. Wright, 145 Mo. App. 623.

No brief for respondent.

STURGIS, J.—At the times herein mentioned the
defendant was a retail merchant in business at Ava,
Missouri. The plaintiff was in business at Chicago, Illi-
nois, and was engaged in selling to merchants a line of
advertising matter to be used by merchants and others
in advertising their business in local papers. . This line
of advertising was known as the "Buster Brown Ad.
Service" and consists of cuts and certain reading mat-
ter in connection therewith to be inserted once a week
in the local papers. On February 12, 1912, an agent
of plaintiff appeared at defendant's store and solicited
him to make a contract for this advertising matter for
one year. The defendant thereupon signed the follow-
ing order and contract: "To Outcult Advertising
Company, 508 Dearborn St., Chicago, Ill., Order No.
3600. Date February 12, 1912. Ship us at our expense,
as per samples shown, your Buster Brown Ad. Service
to cover a period of one year, beginning March 1, 1912.
This service to consist of 52 Buster Brown cuts, 1 font
of type, 8 lbs. in font. We (or I) agree to pay you net
cash monthly, at the rate of $2.10 per week, for one
year, we (or I) to have exclusive right to use the above
Buster Brown Ad Service in our city only, and to hold
type and cuts subject to your order when this contract

expires. Failure to pay any installment when due renders the full amount of this contract due. This contract cannot be canceled. Ship all at one time if possible. . . . All promises and agreements are stated herein; verbal agreements with salesmen not authorized.'' A copy of this was left with defendant and the original forwarded to plaintiff at Chicago. On February 15, 1912, plaintiff wrote defendant a letter acknowledging receipt of the order, accepting the same and stating that it would at once fill the order.

The plaintiff sued on this contract and defendant's answer is a general denial with the further statement that defendant ''was induced to sign said order for said advertising matter by misrepresentations and fraud on the part of the agent of said plaintiff.'' The defendant admits that he signed this order and his only excuse for not knowing its full contents is that he was busy at the time and signed it, after having talked the matter over with the agent, without paying much attention to it. The defendant was allowed to testify, over plaintiff's objection, that the agent soliciting this contract verbally agreed to make arrangements with the Douglas County Herald, a local newspaper, to have this advertising matter inserted in that paper and that the defendant was to pay only the amount of $2.10 per week, the amount specified in the contract as payment for the advertising matter alone. On February 20, 1912, the defendant wrote plaintiff the following letter: ''Gentlemen: I want my order that your agent sent you canceled, as I am selling my stock of goods and cannot use it. Hoping this will all be satisfactory, so do not send it to me.'' The plaintiff proved, however, that it had delivered to the railroad company for shipment to defendant the advertising matter called for by the order before receiving this letter. The plaintiff also answered this letter, stating that it had already filled the order and declining to countermand the order. Plaintiff also called defendant's attention

to the fact that he had a copy of the order and that no provision was made for the same being countermanded. The plaintiff did, however, give the defendant the privilege of transferring the goods and order to his successor in business or any merchant that he might wish in Ava. There is no proof that defendant did sell out his business to anyone and the evidence indicates that he did not do so, at least for some time after this contract was made. It is not shown whether defendant used the advertising matter or not but in any event he declined to pay anything on the contract. The defendant admits that he did not any time notify the plaintiff that its soliciting agent had made an agreement to pay the local paper for running this advertising matter or that he declined to pay plaintiff as agreed because of any agreement made by the agent not embodied in the written contract. When asked why he did not notify plaintiff as to the agent's misrepresentations about paying for inserting the advertising in the local paper, he said he knew it would not do any good because, when he read over the agreement, he saw it provided that any outside agreement would not do any good. Defendant also admits that he never inquired of the local newspaper to find out whether the plaintiff had in fact made the arrangement to publish this advertising matter. He seems to have taken it for granted that they had not and would not comply with the outside agreement. There is nothing to show that plaintiff had any notice or knowledge of the nature of defendant's defense until after this suit was brought.

Laying aside any question as to defendant's good faith in refusing to comply with his contract on the ground of plaintiff's failure to carry out the alleged verbal agreement of the soliciting agent, we think this case must be reversed. Where a business man, possessed of ordinary ability and opportunity to know what he was signing, takes the word of an utter stran-

ger as to some collateral contract and signs a written agreement stating therein that such writing contains the whole agreement and that no verbal agreement with the soliciting agent is authorized, without reading such agreement or having it read, the court cannot be his guardian, although the other party may be guilty of not having fulfilled the verbal promises of the agent. The general rule of law is that all prior and contemporaneous verbal agreements. are conclusively presumed to be merged and embodied in the written agreement. It is not competent for a party signing a written contract purporting to be complete to add to, subtract from, or alter the agreement as written, by parol evidence. This is true where the contract purports to be complete on its face and especially so where the contract provides that it is complete and that no additional or different verbal agreement will be recognized. "The general rule is, that a party, when sued upon a written contract, cannot admit that he signed it and deny that it expressed the agreement he made. [First National Bank v. Wells, 98 Mo. App. 1. c. 573, 73 S. W. 293.]" [Bank v. Brisch, 154 Mo. App. 631, 636, 136 S. W. 28.] In Tracy v. Union Iron Works Co., 104 Mo. 193, 198, 16 S. W. 203, the court said: "The general rule excluding evidence of contemporaneous, or prior verbal agreements, varying or contradicting the terms of a valid written instrument, is the outgrowth of the common experience of men. It is of great antiquity and appears in other systems of jurisprudence besides our own. [Corp. Jur. Civ., Cod. Lib. 4 Tit. 20; Tait's Evid., pp. 326, 327.] . . . So, in private adjustments of reciprocal rights, it is wisely considered that, when parties have deliberately put their mutual agreements into the form of a complete written contract, that expression of their intention should be accepted as a finality, in which is merged all prior negotiations within the scope of the writing." In Textbook Co. v. Lewis, 130 Mo. App. 158, 162, 108 S.

W. 1118, the court said: "It is certain he cannot en-. graft a verbal stipulation or promise, made prior to the execution of the writing, on the obligation created by the instrument." To the same effect is Breeders Co. v. Wright, 134 Mo. App. 717, 115 S. W. 470; Street R. Co. v. Rope Co., 156 Mo. App. 640, 644, 137 S. W. 633; Turner v. Railroad, 20 Mo. App. 632, 635; Harkness & Russell v. Briscoe, 47 Mo. App. 196, 202; Zeller v. Ranson, 140 Mo. App. 220, 230, 123 S. W. 1016. The last case cited is much like the present one and the court declared the law as follows: "Where a party signed a contract without reading it, which contract contained a warning in bold type not to sign without reading and a statement that agents were not authorized to change the conditions printed in it, he was not allowed afterwards to evade it on the ground that he did not read it but signed it, believing statements of an agent that it contained other stipulations than those it actually contained. When one is sued on a written contract, he cannot show that a verbal agreement made prior to the execution of the writing was engrafted upon the instrument. [International Textbook Co. v. Lewis, 130 Mo. App. 158.] Unless some fraud is practiced to induce a party to sign a contract, he cannot avoid the obligation of the contract by denying that he knew its contents or by denying that it expressed the real agreement which he entered into. So, where a party signed an order for goods without reading it and in ignorance of its contents, and afterwards claimed, when the goods were shipped in accordance with the order, that the intention was not to order the goods in the amount sent, in an action for the price of the goods the evidence was examined and it was held that there was no substantial evidence of fraud practiced to induce the signature of the order. [Paris Manufacturing & Importing Co. v. Carle, 116 Mo. App. 581.]" The principle last asserted, that in the absence of some fraud or artifice practiced to induce the party

to sign the contract, he cannot avoid the obligation by claiming that it did not express the real agreement entered into, finds expression in a large number of cases decided by the appellate courts of this State. In Manufacturing Co. v. Karle, 116 Mo. App. 581, 590, 92 S. W. 748, the court said: "The rule now is that unless some artifice or fraud is practiced to induce a party to sign a contract, the party signing cannot avoid the obligation of the instrument by denying that he knew its contents or that it expressed the real agreement. [Layson v. Cooper and Crim v. Crim. supra; Catterlin v. Lusk, 98 Mo. App. 182, 71 S. W. 1109; Magee v. Verity, 97 Mo. App. 296, 71 S. W. 472.]" [To the same effect is Bradford v. Wright, 145 Mo. App. 623, 123 S. W. 108, and cases there cited.]

There is no evidence in this record, and defendant does not claim, that he was laboring under any infirmity or that any artifice or fraud was practiced in order to obtain his signature to this agreement. His evidence is to the effect that he was relying on the promises made by the soliciting agent that the plaintiff would do something not embodied in the written agreement. Defendant cannot be excused for failure to read the agreement when he had every opportunity to do so. He must, therefore, be held to its terms and one of those terms is that "all promises and agreements are stated herein; verbal agreements with salesmen not authorized." It results that plaintiff has established its case and that defendant has utterly failed to show any legal defense. The case, will, therefore, be reversed and remanded with direction to enter judgment for plaintiff for $109.20, and the costs of this case.

*Robertson, P. J.,* concurs. *Farrington, J.,* concurs.