## JAMES W. COLLEY, Respondent, v. NATIONAL LIVE STOCK INSURANCE COMPANY, Appellant.

**Springfield Court of Appeals, December 12, 1914.**

1. **PLEADINGS: Defenses: Non Est Factum: Verification.** A contract of insurance examined and considered not within the purview of Sec. 1985, R. S. 1909, requiring a plea of *non est factum* to be under oath.

2. **EVIDENCE: Admissibility: When Ruled On.** A trial court is not required to pass on the admissibility of evidence until it is offered.

3. **ESTOPPEL: Estoppel in Pais: Specially Pleaded.** An estoppel *in pais* must be specially pleaded and unless so pleaded evidence to establish same will be excluded.

4. **APPELLATE PRACTICE: Pleading Estoppel in Pais: Failure to Object at Trial.** Where estoppel *in pais* was not specially pleaded and evidence to establish same was received without objection and the parties treat the case as though the estoppel had been pleaded, objection cannot be urged for the first time on appeal.

5. **PLEADING: Special Plea: Waiver.** If no objection is made to evidence the necessity of a special plea is waived.

6. **APPELLATE PRACTICE: Finding of Jury: Not Disturbed, When.** The appellate court will not disturb the finding of the jury on facts submitted to them under proper instructions.

7. **INSURANCE: Misrepresentations: Inability to Read: Contract Not Binding, When.** Where one signs an application for insurance who is laboring under some disability or infirmity and is unable to read what he signs and relies upon the representations of the insurer's agent as to what it contains, he is not bound thereby where fraud is practiced on him in procuring his signature to the instrument, the instrument being different from what it was represented to be.

8. ————: **On Animal: Terms and Conditions: Construction.** Action on insurance policy covering an animal. The policy obligated the plaintiff to call a veterinary and notify the insurer in case of sickness of the insured animal. Such obligation did

not arise until plaintiff had substantial reason to believe that the animal was sick.

9. **INSURANCE: Action on Policy Covering Animal: Inference of Jury.** Where an insured animal was found dead with no external marks or evidence of violence, the jury could reasonably infer that the animal died from some disease common to its species.

10. ————: **Vexatious Delay: Evidence.** Action on insurance policy covering an animal. Facts and circumstances considered sufficient to warrant the allowance of fifty dollars as an attorney's fee as part of the judgment for vexatious refusal to pay.

11. ————: **Vexatious Delay: Demand.** Where an insurance company by letter positively denied liability and refused to pay, further demand was not necessary to entitle plaintiff to recover attorney's fee for vexatious refusal to pay.

Appeal from Lawrence County Circuit Court.—*Hon. Carr McNatt,* Judge.

AFFIRMED.

*M. S. Meyberg* and *Charles L. Henson* for appellant.

(1) The cost of the animal is material, and if incorrectly warranted in the application will avoid the policy. Johnson v. Ins. Co., 120 Mo. App. 80; Ins. Co. v. Smith, 157 S. W. 755; Jacobs v. Ins. Co., 146 Mo. 523; Jenkins v. Ins. Co., 171 Mo. 375; Whitmore v. Supreme Lodge K. & L., 100 Mo. 36; Van Cleve v. Union Casualty Co., 82 Mo. App. 668; Life Ins. Co. v. Glaser, 245 Mo. 377. (2) Evidence of estoppel cannot be introduced under a pleading which denies the matter set up in the answer. Estoppel when relied upon must be specially pleaded. Thompson v. Cohen, 127 Mo. 215; Groom v. Morrison, 249 Mo. 550; Ferneau v. Whitford, 39 Mo. App. 311; Bacon's Missouri Practice, sec. 194; Deming Investment Co. v. Shawnee Fire Ins. Co., 83 Pac. 918, 4 L. R. A. (N. S.) 607; Merchants' Natl. Ins. Co. v. Pearce, 84 Ill. App. 255; Evans v. Queen

Ins. Co., 5 Ind. App. 198, 204, 31 N. E. 843; Kahler
v. Iowa State Ins. Co., 106 Iowa, 380, 76 N. W. 734.
(3) An assured cannot escape the force and effect of
statements made in his application for insurance by
the mere claim that he signed the application without
reading or having it read to him, but in the absence of
deceit, fraud or misrepresentation he is bound by his
signature to the same. Herndon v. Triple Alliance,
45 Mo. App. 426; New Madrid Banking Co. v. Poplin,
129 Mo. App. 121; Snider v. Adams Express Co., 63
Mo. 323; Palmer v. Insurance Co., 31 Mo. App. 472;
Bank v. Asel, 154 Mo. App. 228. (4) Where the policy
requires immediate notice of sickness prior to the ani-
mal's death and provides that a failure to give it shall
avoid the policy, no recovery can be had if there has
been a violation of the condition. Illinois Live Stock
Ins. Co. v. Kirkpatrick, 61 Ill. App. 74; Green v. Live
Stock Ins. Co., 87 Iowa, 358, 54 N. W. 349.

*Wm. B. Skinner* for respondent.

(1) A plea of *non est factum,* supported by affi-
davit, imposes the burden of proving the execution of
an instrument which is questioned, and, under such
plea, evidence is admissible to show all the facts and
circumstances surrounding the alleged execution of the
same, which tend to prove that the signature of the
party thereto has been procured by fraud, deception,
imposition or misrepresentation, or that tends to show
that, by reason of inability to read the same, his sig-
nature was procured to a paper other than the one
he thought he was signing. Corby Executor v. Weddle,
57 Mo. 452; Smith Company v. Rembaugh, 21 Mo. App.
393; Law v. Crawford, 67 Mo. App. 153; Broyles v.
Absher, 107 Mo. App. 177; Main v. Hall, 127 Mo. App.
717. (2) It is equally well established by the courts
of last resort in this State that under the allegations
in the petition, in an action on an insurance policy,

''that all the conditions of the policy have been complied with,'' proof of waiver is permissible, and is proof of performance within the meaning of the conditions of the policy, without requiring the waiver relied on to be alleged in the pleadings. Modern Woodmen v. Angle, 127 Mo. App. 108; Thompson v. St. Charles County, 227 Mo. 230-231 and McCulloch v. Phoenix Ins. Co., 113 Mo. 616.

FARRINGTON, J.—Plaintiff recovered judgment for the sum of $507.50 on a policy of insurance and an attorney's fee of $50 on account of defendant's vexatious refusal to pay.

The petition alleged that plaintiff was the owner of a jack, named Gregory, and that on January 29, 1913, the defendant by its policy insured said jack for a term of one year against ''death by accident, disease, fire, lightning, cyclone, theft, or by reason of a broken leg when found necessary by attending veterinary to destroy the animal's life.'' It is also alleged that the jack died on January 23, 1914, and that before and after his death the plaintiff (respondent) performed all the terms and conditions of the policy and did all things required to be done by him, but that defendant declined to pay. and its refusal to pay was vexatious.

The answer admits the issuance of the policy, but alleges that it was based upon an application therefor by the plaintiff to the defendant in which application the plaintiff warranted that he had paid $1000 for the jack, which was not true. The second defense was that the application to which the policy referred contained a promissory warranty that in case the animal should become sick the same would receive the care of a veterinary surgeon, and in this, defendant charged that plaintiff failed. As a third defense defendant alleged that the policy makes an exception

and does not include death where the animal becomes sick and the plaintiff fails to at once notify the defendant company of its sickness by telephone or telegraph. It is alleged that the animal became sick on January 20th from which sickness he died on January 23d, and that plaintiff failed to give any notice whatsoever to defendant of the sickness.

The plaintiff for reply filed a general denial and a plea of *non est factum,* and—"further replying, plaintiff denies that he executed the application, the copy of which is set out and referred to in defendant's said answer." The reply is sworn to.

It is admitted that the application was by express terms made a part of the policy and that the policy was based entirely on the answers contained in the application, and that in the application which was signed by the plaintiff, the question, "What amount did you pay for the animal?" is answered, "One thousand dollars." The plaintiff admitted that the animal did not cost him $1000 but that $700 was the purchase price and that he paid $52 freight and expense to transport the jack from north Missouri to his farm. He testified that he signed the paper while out in the field where the defendant's agent came to write the insurance. The agent had been soliciting him to place an insurance policy on this jack. The plaintiff testified that he did not have his glasses with him when he signed the application, and that the agent of the defendant made up the application, putting down the answers that he (the plaintiff) gave, and that when it was finished he signed it but could not read it. He further stated that he told the agent exactly what the jack cost him and that the agent attempted to get him to answer that it cost him $1000 because of the original cost, the freight and expense of fixing up the lot and the barn or stall for the jack, as well as the cost of this insurance, but plaintiff says he refused to say the

jack cost him $1000 on account of this, but on the other hand told the agent the actual facts as to the purchase of the jack for $700 and the expense of getting him there, $52, making the total cost $752, and that the agent then told him he could write him for $500 as the company insured for two-thirds of the amount paid for the animal; that he then told the agent to fix up the application so that he would be insured, and that, relying upon the agent to fix it just as he (the plaintiff) had related the facts, he signed the application under the circumstances as before detailed.

When the plea of *non est factum* was made by the plaintiff there was no motion filed by the defendant nor anything done to require the plaintiff to be more definite and specific in said plea.

Nor is it at all certain that it was necessary to have sworn to the reply because the application provided that the insurance should not be in force until and unless the application should be accepted by the company. This would make the contract one that was to be executed by more than one party, and hence does not fall within the rule in section 1985, Revised Statutes 1909, requiring a plea of *non est factum* to be under oath.

In the abstract presented the only reference made by any one to the failure of the plaintiff's reply to plead estoppel occurred during the statement of the case by plaintiff's attorney when he referred to what the evidence in this particular would disclose. Defendant objected to such statement for several reasons, one being that such a defense had not been pleaded. For a ruling, the court remarked, "Go ahead." The court was not required to pass upon the admissibility of evidence at that point in the trial and would naturally withhold a specific ruling on the question until the evidence was offered.

The testimony of the plaintiff went in without any objection having been made by the defendant as to it being evidence of a fraud or an estoppel which had not been specially pleaded. The only objection to this testimony interposed when this question was asked plaintiff—"What did you tell him? Tell the jury all that you told him about how you came to get the jack and the cost of it?"—was, "We object to the question for the reason that it will throw no light on the issues in this case and further that the witness has admitted signing the paper adopting it as his own and that the question if answered would tend to deny a written instrument and would be the means of contradicting and varying the instrument and its terms by parol testimony." The objection was overruled. A motion was then made to strike out the testimony of the plaintiff hereinbefore detailed for the same reasons. Nowhere in the record do we find an objection to any testimony because the facts disclosed by such testimony should have been specially pleaded before they would work an estoppel on the defendant.

The reports of our State contain many decisions that an estoppel *in pais* must be specially pleaded and that unless it is so pleaded evidence designed to establish such estoppel will be excluded. However, where the evidence is received without such objection and the parties treat the case as though the estoppel had been specially pleaded, such objection cannot be urged for the first time in the appellate court. [See Price v. Hallett, 138 Mo. 561, 38 S. W. 451; McDonnell v. De Soto Sav. & Bldg. Assn., 175 Mo. 274, 275, 75 S. W. 438; Wilcox v. Sovereign Camp W. O. W., 76 Mo. App. 580; Strother v. De Witt, 98 Mo. App. 299, 300, 71 S. W. 1129; Ziekel v. Douglass, 88 Mo. 382; Kelly v. Thuey, 143 Mo. 437, 45 S. W. 300.] We find this rule laid down in Bacon's Missouri Practice, Vol. 1, sec. 194, p. 233: "If no objection is made to evidence the neces-

sity of a special plea is waived." Therefore, the point contended for by appellant in its brief and oral argument that the plea of *non est factum* is not a sufficient plea under which evidence tending to establish an estoppel may be introduced, is not properly before us.

The question whether plaintiff falsely stated in his application for insurance that the cost price of the jack was $1000 was properly submitted to the jury in the instructions and the finding thereon in plaintiff's favor will not be disturbed.

Appellant cites authorities to the effect that an assured cannot escape the force and effect of statements made in his application for insurance by the mere claim that he signed the application without reading or having it read to him, and that unless some fraud, deceit or misrepresentation has been practiced he is bound by his signature to the same. This is undoubtedly the law and has been so declared by this court in Outcult Advertising Co. v. Barnes, 176 Mo. App. 307, 162 S. W. 631, and in England v. Houser, 163 S. W. 893. But in both those cases the principle is recognized that where the party signing was laboring under some disability or infirmity and was unable to read what he was signing and relied upon the other party's word as to what it contained, he is not bound where a fraud is practiced on him in procuring his signature to the instrument which was different from what it was represented to be. [See Paris Manufacturing Co. v. Carle, 116 Mo. App. 581, 591; 92 S. W. 748.]

Defendant's second and third defenses we think are overcome by the testimony of the plaintiff with reference to any knowledge of the jack being sick prior to his death. It is admitted that plaintiff did not have a veterinary surgeon, nor did he wire to the defendant advising it of the sickness of the animal. The evidence shows that a veterinary came to plaintiff's place

on January 21st to treat a mule, and that as he passed by the barn door he saw the jack Gregory and plaintiff testified he said something about Gregory being a big jack, to which the veterinary replied, "That jack always did look like there was something wrong with him,"—"and I said it is not, this is a good jack and healthy too, and I went up to see him and slapped him and he galloped off." The plaintiff says that he went with the man to feed the jack and saw that he was eating heartily. He further testified that the veterinary never did say that the jack was sick or that it ought to be treated. The veterinary made the remark above referred to as he was going to his buggy. Plaintiff also testified that he never knew the jack was sick or that anything was the matter with him until he was found dead in his stall on January 23d. If this was true, and the jury believed it, he could not have telegraphed or telephoned the insurance company advising them of the jack's sickness prior to his death; neither was there any obligation on plaintiff to call a veterinary until there was some substantial reason for believing the animal was sick.

It is also contended that plaintiff cannot recover in this case because he has not shown that the animal died from some of the causes mentioned in the insurance policy. [See Banta v. Continental Casualty Co., 134 Mo. App. 222, 113 S. W. 1140; and Walton v. Phoenix Ins. Co., 162 Mo. App. 316, 141 S. W. 1138.] The evidence disclosed in the record is that the jack was found dead and that there was no external mark or evidence of any violence. Under these circumstances the jury could reasonably infer that the jack died from some disease common to that species.

Appellant further complains of that part of the judgment which allows $50 as an attorney's fee, because, it argues, there was no evidence of vexatious

refusal to pay upon which such issue should have been submitted to the jury.

In the letter (referred to as "Exhibit C") written by the insurance company to the plaintiff prior to the commencement of this action, a refusal to pay was placed upon the grounds that plaintiff failed to give notice of the sickness of the animal—did not secure the services of a veterinary—that although the veterinary informed him the jack was sick with spinal paralysis the plaintiff refused to allow the veterinary to treat the animal—that plaintiff made false statements with reference to the cost of the animal—and that the jack was not registered as warranted. Some of these reasons we have already disposed of in the opinion; the others the defendant conceded at the trial could not be established. This is sufficient evidence from which the jury would be reasonably warranted in concluding that defendant vexatiously refused to pay the claim of the plaintiff. The letter was a positive refusal to pay; hence there was no further need for a demand. The questions as to the vexatious refusal to pay and the failure to make demand are discussed in the case of Coscarella v. Insurance Co., 175 Mo. App. 139, 157 S. W. 873.

The judgment is affirmed. *Robertson, P. J.,* and *Sturgis, J.,* concur.