NICHOLAS ZELLAR et al., Appellants, v. MAGGIE RANSON et al., Respondents.

Springfield Court of Appeals, December 6, 1909.

1. **CONTRACTS: Evidence: Written Contract Not Varied by Parol Evidence.** In the absence of fraud or mistake, parol or extrinsic evidence is not admissible to vary, add to, modify or contradict the terms or provisions of the written contract. All previous negotiations and agreements with reference to the subject-matter are presumed to have been merged in the written instrument.

2. ———: ———: ———: Signature Obtained Without Fraud. Unless some fraud is practiced to induce a party to sign a contract, he cannot avoid the obligation of the contract by denying that he knew its contents or by denying that it expressed the real agreement which he entered into.

3. ———: ———: ———: Where No Fraud is Pleaded. Where no fraud is pleaded by defendants in their answer and the contract is clear and unambiguous, the defendants are bound by its express terms.

4. ———: ———: ———: Facts Entitling Plaintiff to Recover. Where the order for goods is in writing and the evidence is uncontradicted as to plaintiff having complied with the order for the shipment of goods, and the written contract is explicit as to the amount due and there was no fraud pleaded nor shown in the procurement of the contract, defendants will not be permitted to vary the terms of the writing by parol testimony and plaintiffs are entitled to a declaration of law directing the amount which they are entitled to recover.

5. RES ADJUDICATA: Voluntary Nonsuit. Where the record shows that plaintiff took a voluntary nonsuit in a former action involving the same controversy and subject-matter, this was not an adjudication nor a bar to the institution of a new suit and defendants' plea of *res adjudicata* must fail.

Appeal from Jasper Circuit Court.—*Hon. Haywood Scott,* Judge.

REVERSED AND REMANDED (*with directions*).

*George W. Crowder* for appellants.

(1) Under the terms and provisions of the contract the court erred in admitting the parol testimony of the defendant, Maggie Ranson. Loan & Trust Co. v. Workman, 71 Mo. App. 278; Wood v. M'urphy, 47 Mo. App. 539; Banks v. Richart, 101 Mo. App. 242; Martin v. Witty, 104 Mo. App. 268; 1 Beach on Modern Law of Contracts, sec. 784; Plano Mfg. Co. v. Eish (Iowa), 97 N. W. 1106; Ellis v. Brewing Co., 207 Ill. 291; Price v. Marthon (Mich.), 81 N. W. 551; Thomas v. Iron Co., 208 Pa. 478. (2) Where one is sued on a written contract he cannot show that a verbal stipu-

lation, made prior to the execution of the writing, was engrafted upon the instrument. International Text Book Co. v. Lewis, 130 Mo. App. 158. (3) No fraud having been pleaded by defendants in their answer, and the contract being clear and unambiguous, the defendants are bound by its express terms. Leicher v. Kenny, 98 Mo. App. 394; Manufacturing & Importing Co. v. Carle, 116 Mo. App. 581. (4) Plaintiffs' declaration of law, in the nature of directing a finding and judgment in plaintiffs' favor, and directing the amount to which the plaintiffs were entitled, should have been given. Taylor v. Felder (Ga.), 59 S. E. 844. (5) In the other suit, plaintiffs took a voluntary nonsuit; this was not an adjudication. Therefore, defendants' plea of *res adjudicata* must fail. Weithaupt v. City of St. Louis, 158 Mo. 655; National Waterworks Co. v. School Dist. of Kansas City, 23 Mo. App. 227; Ellington v. Crockett, 13 Mo. 72; Taylor v. Larkin, 12 Mo. 193.

*T. C. Tadlock* for respondents.

NIXON, P. J.—This case was first tried in the Jasper county circuit court. An appeal was taken to the Kansas City Court of Appeals, and from there the case was certified to this court on the 4th day of October, 1909.

In the Kansas City Court of Appeals, a motion was filed for leave to amend appellants' abstract of record, statement and brief, the grounds alleged being that the attorney for appellants sent the abstract of record, statement and brief to appellants at Iowa City, Iowa, inserting appellants' bill of exceptions, gave directions for printing, and that the printer who undertook the work, through mistake, wholly omitted and left out of the abstract of the record the bill of exceptions, of which mistake appellants had no knowledge until March 15, 1909,—then too late to comply with rule 15 of the Kansas City Court of Appeals by serving respond-

ents with the abstract and brief twenty days before the date on which the case was docketed for hearing.

The respondents, in answer to this motion for leave to amend, stated that the appellants were guilty of gross negligence in perfecting the appeal.

It does not appear what action, if any, the Kansas City Court of Appeals took on this motion.

Thereafter, this case was set for hearing in this court on November 4, 1909. On October 4, 1909, the appellants' amended abstract and brief were filed in this court, and on November 4, 1909, the cause was submitted on the brief of the appellants. The respondents made no further appearance.

From the fact that the certification of the case to the Springfield Court of Appeals necessitated a new setting of the same, together with the other facts, we conclude that justice requires—in the absence of any further objection by the respondents—that the amended abstract and brief of appellants were filed in due time in this court, and the motion to strike out is accordingly overruled.

STATEMENT.—This case is based on a contract in writing signed by the defendants, dated March 15, 1907, whereby the defendants purchased of the plaintiffs a quantity of jewelry valued at $120. The petition, filed January 4, 1908, recites that Nicholas Zellar, S. G. Duley and Okle Zellar were partners, doing business under the name of the Rhode Island Manufacturing Company, and that they were manufacturers of and dealers in jewelry with offices in the city of Iowa City, Iowa, and in other places; that defendants, Maggie Ranson and 'Cleave Ranson, were partners, engaged in the general merchandise business under the firm name of M. Ranson & Son, at Neck City, in Jasper county, Missouri. That on the 15th day of March, 1907, the defendants ordered of plaintiffs, in writing, over the signature of M. Ranson & Son, signed by the

defendant, Maggie Ranson, a bill of merchandise consisting of specified articles of jewelry, through J. B. Weil, plaintiffs' traveling salesman, and agreed to pay for said goods the sum of $120 in future acceptances, each one month after the other; that the order was received by the plaintiffs in the due course of mail on the 18th day of March, 1907, and approved by them on the same day; that relying upon it, the plaintiffs delivered at their express office in Iowa City the goods sold consigned to the defendants. That the defendants refused to give the acceptances as agreed and have ever since refused to do so. That the plaintiffs in every way complied with the conditions of the contract, and that there remained due the sum of $120 for such jewelry. The factory order, appended to the petition as an exhibit, and on which the goods were purchased, contains this provision: "The undersigned acknowledges that the salesman is a mere soliciting agent and that all terms, conditions and agreements between himself and the salesman appear hereon." This order was signed,— "By, Mrs. Maggie Ranson, buyer." It contained also this provision: "No outside or verbal agreements shall be binding on either party." The order shows that the goods were directed to be shipped to M. Ranson & Son and contains an itemized statement of the goods ordered of plaintiffs.

The defendants filed an answer consisting of a general denial and the special defense that at the time the order was taken, it was agreed between Maggie Ranson and the plaintiffs' soliciting agent, J. B. Weil, that the order was taken for the convenience of the said agent, and was by him to be held for the consent and approval of Cleave Ranson, a copartner, and the business manager of the firm of M. Ranson & Son, who, at the time, was out of the city, and the goods were not to be shipped until thirty days after plaintiffs had been notified by letter that the said Cleave Ranson had ratified said order and consented to the purchase of said

merchandise; that on the same day that the order was given, the said Cleave Ranson returned home and refused to ratify and approve said order, and that thereupon, in pursuance of such agreement, Maggie Ranson addressed and posted a letter to the plaintiffs at Chicago, Illinois, notifying the plaintiffs of the refusal of Cleave Ranson to ratify and approve the order and directing them to cancel the order. The defendants also stated in their answer that prior to this time, the plaintiffs instituted a suit in the Jasper county circuit court against the same defendants on the same cause of action set up in the petition herein; that the defendants in their answer to said cause of action, set up the same facts as set up in this answer; that the issues were joined thereon and the case was submitted to the court who found the issues for the defendants, and that such judgment was a final judgment on all the issues in this case.

To this answer the plaintiffs filed a replication, being a general denial of all new matter set up in the answer.

The court, sitting as a jury, found the issues for the defendants. Plaintiffs filed the usual motions for a new trial and in arrest, and these being overruled, in due course perfected their appeal.

At the trial, the factory order was offered in evidence which substantiated the material allegations in plaintiffs' petition.

The deposition of S. G. Duley was produced by the plaintiffs, which is substantially as follows: He testified that he was the manager of the Rhode Island Manufacturing Company, a partnership composed of Nicholas Zellar, Okle Zellar and himself; that they are wholesalers of jewelry and novelties, and do business principally through solicitors or agents; that he had general charge of the business, directing the solicitors and accepting or rejecting all orders sent in by

the solicitors; that J. B. Weil was a soliciting agent for the company at that time, engaged in soliciting orders in March, 1907, on forms provided by the company, and that he had no authority in any way as their agent to bind the company except on the printed forms for orders which each customer signed. That the plaintiffs had dealings with the defendants, and that on the 18th day of March, 1907, he received an order through the mail from J. B. Weil, bearing the signature,—M. Ranson & Son, by Mrs. Maggie Ranson, buyer,—on one of the regular order forms known as Form B10, dated March 15, 1907, calling for goods to the amount of $120. The order was produced and identified by the witness and filed as "Exhibit A." He stated that on receiving the order, he looked into the standing of the defendants, found them satisfactory, accepted the order, and directed that the goods listed and called for in the order be prepared and shipped to the address named in the order; that these directions were given to Frank Zellar who was in charge of the stock department of the plaintiffs. That he also mailed a letter to the defendants advising them of the shipment of the goods on the 18th day of March, 1907. That on March 21st, he dictated and mailed another letter to the defendants saying that he enclosed a duplicate bill of lading for the goods purchased. He stated that the plaintiffs received no letter from M. Ranson & Son dated March 15, 1907, and addressed to the plaintiffs; that he had charge of the opening of the mail for the company; but, that on the 19th day of March, he did receive a letter addressed to the plaintiffs at Chicago, and forwarded from Chicago to Iowa City; this letter was filed as "Exhibit 2." That on March 20th he mailed the defendants another letter; that on March 28th, he received a letter from the defendants addressed to the plaintiffs at Iowa City, and that he wrote a letter to defendants on March 28th, all of which letters or copies thereof were filed as exhibits. That neither himself

nor the company received any further communication from the defendants. That the plaintiffs had complied with all the conditions of the contract, but that the defendants had never complied with any of them, had never given the acceptances or paid any part of the $120. That the articles shipped were exactly what their order called for in kind, quality and price, and that plaintiffs had not been called on by defendants for an exchange of the goods, as provided by the order, and no report had been made of goods on hand that were unsold. That defendants were not entitled to any credits or set-offs. And that the goods were duly shipped to defendants before the plaintiffs received any notice of their desire to cancel the order.

The deposition of Frank Zellar was also offered in evidence. He stated that he was in charge of the stock department of the plaintiffs at the time this order was received; that the order was approved, and that the goods were packed and delivered to the express office directed to the defendants.

The deposition of J. B. Weil was offered in evidence by the plaintiffs. He stated that he took the order of Maggie Ranson for the goods described in plaintiffs' petition; that he showed her the acceptances she would be expected to sign and told her where to sign them when the company sent the goods; that she said she liked the advertising arrangement in the contract very much. That he was a solicitor of goods on forms furnished by the company and had no authority to take orders except on these order blanks; that every arrangement between himself and the customer who signed the order had to be printed, written or interlined on the contract order, and all orders were sent subject to plaintiffs' approval; that he had no authority to bind the company in any way except as appeared on the order blanks. That he showed Maggie Ranson the order Form B10 and explained all of its terms and conditions to her; that she said she liked the arrangement,

and to have the goods sent along as soon as possible. That he made no agreement that the order was only for his convenience or that she was to have thirty days in which to ratify the order.

Maggie Ranson, for the defendants testified that she and her son, Cleave Ranson, composed the firm of M. Ranson & Son. Upon being asked to state the facts in regard to the order of goods sued on, the defendants objected to the introduction of any oral statements for the reason that the facts were all stated in the written contract which was already in evidence, and for the further · reason that it is stated in that contract that no outside or verbal agreement should be binding on either party, and for the further reason that in said contract it is stated that all terms, conditions and agreements between the defendants and the salesman appear on the contract. This objection was overruled and exception saved. She thereupon testified that she was very busy waiting on customers when the plaintiffs' salesman came in, her son being away; that he attempted to read the contract to her every time she was not busy, and that when he asked her to sign it, she signed it not knowing what it was; "he read it to me himself." That the understanding was the goods were not to be shipped for thirty days, and even not then unless Cleave Ranson consented; that the order was to be held subject to countermand. That Cleave Ranson returned home and refused to approve the order, and that the goods arrived in three days. Her testimony is then substantially the same as that of the plaintiffs.

The defendants then offered in evidence Docket No. 1, November Term, 1907, page 6, in reference to the case of Nicholas Zellar et al. v. Maggie Ranson et al. The plaintiffs objected to the introduction of this docket entry because the docket showed that the words, "trial by court and judgment for defendants," were stricken out so that the docket entry would read,— "Plaintiffs take nonsuit;" that the docket entry does

not show a final determination of that suit. This objection was overruled and exception saved. The docket entry is as follows: "Bond filed 1, Approved 2, Ans. filed 2, reply filed 3, deposition for plff. filed 19, defts. ask and granted permission to amend answer by interlineation 20, reply filed, plffs. takes non suit 28."

## OPINION.

The written contract herein, upon which this suit arose, purports to be complete in itself, and the complete and final expression of the agreement made between the plaintiffs and the defendants. It is unambiguous and unequivocal in its terms and conditions, and contained among other vital clauses, the following stipulation: "Please ship me the goods described below from your nearest distributing point on terms and conditions hereon and no others. No outside or verbal agreement shall be binding on either party. The undersigned acknowledges that the salesman is merely a soliciting agent, and that all terms, conditions and agreements between himself and the saleman appear hereon."

The answer set up no grounds for cancelling this contract on account of fraud or deceit, but admitted its execution by the defendant; and, at the trial, the defendant, Maggie Ranson, over the objections and exceptions of the plaintiffs, was allowed to give evidence materially varying and changing the written contract in its essential conditions, supporting the allegations of her answer and setting up a new *oral* contract to the effect that at the time the goods were ordered and at the time she signed the order for the goods, another and different contract had been made that the goods were not to be shipped for thirty days after plaintiffs had been notified, and the other partner, Cleave Ranson, had consented to the purchase of such goods and ratified the order. It further appears that the goods were shipped pursuant to the order before the plaintiffs received any notice whatever that the defendants desired

to rescind the order. Under the evidence in this case, where the agreement of the parties was embodied in writing and executed by the defendants, the trial court erred in admitting the oral testimony of Maggie Ranson. [Leicher v. Keeney, 98 Mo. App. 394.]   17 Cyclopedia of Law and Procedure, page 595: "The most usual application of the parol evidence rule is with respect to contracts, as to which it is established that in the absence of fraud or mistake parol or extrinsic evidence is not admissible to vary, add to, modify, or contradict the terms or provisions of the written instrument by showing the intentions of the parties or their real agreement with reference to the subject-matter to have been different from what is expressed in writing; for where the parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of their engagement, all previous negotiations and agreements with reference to the subject-matter are presumed to have been merged in the written contract, and the whole engagement of the parties and the extent of their undertaking is presumed to have been reduced to writing."

Where a party signed a contract without reading it, which contract contained a warning in bold type not to sign without reading and a statement that agents were not authorized to change the conditions printed in it, he was not allowed afterwards to evade it on the ground that he did not read it but signed it, believing statements of an agent that it contained other stipulations than those it actually contained. When one is sued on a written contract, he cannot show that a verbal agreement made prior to the execution of the writing was engrafted upon the instrument. [International Text Book Co. v. Lewis, 130 Mo. App. 158.]

Unless some fraud is practiced to induce a party to sign a contract, he cannot avoid the obligation of the contract by denying that he knew its contents or

by denying that it expressed the real agreement which he entered into. So, where a party signed an order for goods without reading it and in ignorance of its contents, and afterwards claimed, when the goods were shipped in accordance with the order, that the intention was not to order the goods in the amount sent, in an action for the price of the goods the evidence was examined and it was held that there was no substantial evidence of fraud practiced to induce the signature of the order. [Paris Manufacturing & Importing Co. v. Carle, 116 Mo. App. 581.]

No fraud having been pleaded by defendants in their answer, and the contract being clear and unambiguous, the defendants are bound by its express terms. [Leicher v. Keeney, 98 Mo. App. 394; Paris Manufacturing & Importing Co. v. Carle, 116 Mo. App. 581.]

To undertake to site all the cases in this and other states sustaining this principle would be as vain a proceeding as to attempt to count the stars in the milky way or the sands of the sea shore.

There being no conflicting evidence, and the order for the goods being in writing, and the evidence being uncontradicted as to the plaintiffs having complied with the order in the shipment of the goods, and there being no question as to the amount due under the written contract, plaintiffs' declaration of law, directing a finding and judgment in plaintiffs' favor, and directing the amount to which the plaintiffs were entitled, should have been given. [Taylor v. Felder, 59 S. E. 844.]

The evidence shows that in the case of Nicholas Zellar et al. v. Maggie Ranson et al., formerly instituted in the Jasper county circuit court, the plaintiffs took a voluntary nonsuit. This was not an adjudication or a bar to the institution of a new suit, and defendants' plea of *res adjudicata* must fail. [Wiethaupt v. City of St. Louis, 158 Mo. 655; National Waterworks Co. v. School Dist. of Kansas City, 23 Mo. App. 227; Taylor

v. Larkin, 12 Mo. 103; Ellington v. Crockett, 13 Mo. 72.]

The judgment of the trial court is therefore reversed and the cause remanded with directions to enter judgment for plaintiffs for $120. *Cox, J.,* concurs; *Gray, J.,* not sitting.