## ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT.THE

## MARCH·TERM, 1912.

---

(Continued from Volume 162)

---

## JAMES ENGLAND, Appellant, v. L. F. HOUSER, Respondent.

### Springfield Court of Appeals, April 1, 1912.

1. **CONTRACTS: Written Contract: Subsequent Oral Contract: Recognizing Written Contract.** In an action on a written order for a monument, plaintiff alleged compliance with the terms of said order and that he had made and delivered the monument in accordance therewith. The defendant denied that plaintiff had complied with the terms of the order. At the close of plaintiff's evidence the trial court sustained a demurrer thereto on the grounds that the evidence showed that the written contract had been changed and superseded by a valid oral contract. The evidence is examined and *held* not to show any new contract, but that from the subsequent conduct of both parties it appeared that they recognized the binding force of·the written contract. *Held, further,* that the defendant is liable under such written contract, provided plaintiff is able to show compliance with its terms.

2. ————: **Subsequent Oral· Contract Supplanting ˙Written Contract.** The courts will not hold that an oral contract supersedes a former written one, until it appears that the second contract was intended to and did in fact take the place of and abrogate and supplant the first.

England v. Houser.

3. ———: ———: **Adjusting Details of Written Contract.** Parties are always at liberty to adjust the details of transactions where they do not materially affect their vested rights under the written contract, without abrogating the whole contract.

4. ———: ———: **Remitting Interest Provided in Contract.** In a suit to recover the purchase price of a monument, which defendant had ordered from plaintiff, the original contract provided that the purchase price was to be paid with interest after delivery. Defendant claimed that plaintiff subsequently agreed not to charge interest until the fall following the delivery of the monument. *Held,* that this agreement did not abrogate the original contract, but if defendant wished to avail himself of the remission of interest he could raise the issue by proper plea.

5. **SALES: Contracts: Complying with Order: Waiver: Prima Facie Case.** In an action to recover the purchase price of a monument which plaintiff claimed to have made and delivered on an order from the defendant, *held,* that if the plaintiff is able to show he complied with the terms of the order, or that its performance was waived or prevented by the defendant, plaintiff will have made a prima facie case.

Appeal from Barry Circuit Court.—*Hon. Carr McNatt,* Judge.

REVERSED AND REMANDED.

*Mayhew, Sater & Gardner* for appellant.

(1) While a contract remains executory on both sides, an agreement to annul on one side is a consideration to annul on the other and *vice versa.* On the other hand if the contract has been executed on one side an agreement without any new consideration, that it shall not be binding, is without consideration and void. 9 Cyc. 594; Coal Co. v. Strunk, 96 S. W. (Ky.) 608; Gibbons v. Bente, 22 L. R. A. (Minn.) 80; In re Naylor Mfg. Co., 135 Fed. (Pa.) 206; Fine v. Rogers, 15 Mo. 315. (2) Parties are always at liberty to modify, change or abrogate their executory agreement, because the change is merely a change of into modify, change or abrogate their executory agree-

ment, there is a new relation between them, a status which the law recognizes as being of value. A contract in abrogation of such a relation must be supported by a new and moving consideration. Zerr v. Klug, 121 Mo. App. 292. (3) The evidence shows a mere forbearance on part of plaintiff and in favor of defendant. Such verbal arrangement, if made, was unsupported by any consideration, there being no dispute between the parties about the indebtedness. Garnier v. Papin, 30 Mo. 243; Montgomery Co. v. Auchley, 92 Mo. 126; Zerr v. Klug, 121 Mo. App. 292; Rucker v. Harrington, 52 Mo. App. 496; Mack v. Schneider, 51 Mo. App. 100; Bruckman v. Dry Goods Co., 91 Mo. App. 454. (4) The court will not hold that the oral contract superseded the former written one unless it appears that the second contract was intended to and did in fact take the place of and abrogate and supplant the first. Coal Co. v. Strunk, 96 S. W. (Ky.) 603; McClurg v. Whitney, 82 Mo. App. 631.

*J. S. Davis* for respondent.

(1) Where the evidence shows a wholly different cause of action from that pleaded, the court should direct a verdict for defendant. Phillips v. Mastbrook, 24 Mo. App. 129; Trimble v. Steward, 35 Mo. App. 537; Edwards v. Albrecht, 42 Mo. App. 497; Whipple v. Association, 55 Mo. App. 554. (2) A recovery, if at all, must be had on the contract set forth in the petition. Link v. Vaughn, 17 Mo. 585; Ray v. Bowles, 83 Mo. 170; Perry v. Barret, 18 Mo. 145; Price v. Railroad, 72 Mo. 416; Leslie v. Railroad, 88 Mo. 54; Clements v. Yeates, 69 Mo. 623; Const. Co. v. Iron Works, 169 Mo. 154; Edlen v. Strong, 34 Mo. App. 295. (3) Parties can modify a written contract by a subsequent agreement, but when that has been done, the plaintiff should declare on the modified contract, and not on the original one. Lanitz v. King, 93 Mo. 519. (4)

Parties may, by a subsequent oral agreement, upon a sufficient consideration, change the mode of payment or other terms of their written contract, or they may discard it altogether. Bunce, Admr. v. Beck, Ex., 43 Mo. 280.

NIXON, P. J.—This was an action on a written order for a monument for the grave of defendant's deceased wife. At the close of plaintiff's evidence a demurrer thereto was sustained by the court and judgment entered for the defendant, from which the plaintiff has appealed.

The petition alleged that on September 18, 1908, defendant entered into a written contract and agreement with plaintiff, which is set out in full. The material portions of this contract are as follows: "James England, Neosho, Mo.—Please deliver for me at Rocky Comfort Cemetery, State of Missouri, about the first of February, 1909, or as soon thereafter as convenient the work described in this contract inscribed as follows: 'Cynthis A. Houser, 1864-1908.' Leave place at top for this, with such extensions as may be customary, and on delivery of above described work, for value received, I promise to pay James England, or order, $165, with interest at the rate of eight per cent after delivery until paid. . . . No verbal understandings or agreements allowed, and no countermands accepted. . . . Notify when finished before lettering so he may change for same price. (Signed) L. F. Houser, Postoffice Address, Neosho, Mo. Witness: O. A. England." The petition then alleged that "the plaintiff within the time limited in said contract did deliver at the Rocky Comfort Cemetery a monument of the kind, quality, dimensions, and with the inscriptions thereon, as provided in said contract to be by him performed. But said defendant has failed and refused to pay plaintiff the said sum of one hundred and sixty-five dollars although re-

quested to do so.'' Judgment is asked for that amount with interest thereon at the rate of eight per cent per annum from February, 1909.

The answer pleads a general denial. Also that plaintiff did not comply with the terms of said instrument in that he did not put up at the grave of the deceased wife of defendant any stone of any character whatever, but that the stone plaintiff put up is at least one hundred yards from the grave of defendant's deceased wife.

At the close of plaintiff's evidence in chief, the court at the request of the defendant gave the following peremptory instruction: ''Comes now defendant at the close of all the evidence on the part of plaintiff, and asks the court to instruct the jury that under the pleadings and evidence they will return a verdict in favor of defendant, for the reason that this action is based on a written contract and plaintiff's evidence shows that said written contract had been changed and superseded by a valid and binding oral contract before this suit was instituted.''

It will be seen that the contract in question was a written order and promise to pay for a monument for the grave of defendant's deceased wife, to be delivered at Rocky Comfort Cemetery, and to be the size specified in the order and finished according to said order, but that before delivery defendant was to be notified so he might change the lettering thereon, if he desired, without extra charge. The monument was to be delivered at the cemetery ''about the first day of February, 1909, or as soon thereafter as convenient.''

This contract was made at defendant's home. As soon as the order reached plaintiff's shop at Neosho, plaintiff acknowledged receipt of it, and wrote defendant that it might not be possible to get the granite top-piece within the time mentioned in the contract but that he would do the best he could. Plaintiff made

a special order for the granite top and when it came he notified defendant that the stone was there and that at any time he wished to come down and look over the work he could do so. Plaintiff wrote defendant two other letters before he notified defendant that he would deliver the monument, inviting him to come down and look over the work and suggest any changes he might desire. After about thirty days, plaintiff having received no reply wrote defendant a third letter notifying him that they would be at the cemetery on a certain day and for defendant to meet them there and show them where to set the stone, but received no reply. The plaintiff then loaded the monument into wagons and started them on their way to the cemetery, which was twenty-five miles from Neosho. After the wife was buried. Plaintiff then sent his brother to defendant stating that he did not want the monument delivered until he looked at it. In putting up the monument, through mistake, plaintiff put it up at a grave about one hundred yards from where defendant's wife was buried. Plaintiff then his brother to defendant's home to notify him that the monument was delivered. The monument was like the one called for by the contract and was delivered and set up in Rocky Comfort Cemetery by the latter part of March.

After this, plaintiff received several letters from the defendant, and during the wheat harvest in the following June, plaintiff called on defendant and a conversation was had between them as to which plaintiff testified as follows: "I went and talked with defendant and he said at that time the only objection he had was that the monument was delivered a little before he was ready to pick it, and I said, 'Mr. Houser, you should have told me that before and we could have arranged it. We have no desire to set the monument up before you are ready, but the contract called for it to be set up and I didn't know when you were ready.' We talked a good while. I told him I would

be willing to wait on him; that I wanted to get it settled; I didn't want to go ahead and have any trouble. We talked quite a while and he said he wanted the letters 'Wife of' on his monument. I said, 'You didn't say so and we didn't know you wanted it on. Otherwise we would have put it on. If that is all the matter, I will put it on. I will bring my lettering tools and put that on.' He also said in the conversation that the monument was not on his lot. I told him that we were not at fault. I said that I would bring the men over and put it on the lot. He said, 'I want to put in a concrete curbing, and also a concrete foundation for the monument.' I told him to do that and we would come and set the monument on the lot. In the meantime, he said he didn't want to pay any interest. I told him that we would wait until fall and not charge him any interest. I showed him how to set the foundation so it would look well. He thanked me and said he was busy in the harvest and as soon as he got through he would write me and have me come to Wheaton. He said, 'All I want of you is to be responsible for the breakage and to put the letters on it.' He said, 'I will write you in about two weeks.' He never notified me to come until along in the fall. I wrote him and he answered my letter. I wrote and asked him if he was ready for me to come and do the lettering on the monument. I told him that in cold weather it was almost impossible to do the lettering on the granite in the open and I needed the money, or something like that.''

Under the evidence it is apparent that the defendant is liable to the plaintiff under the original written contract provided plaintiff's evidence shows a compliance with its terms, *unless* a subsequent oral contract between them is disclosed by plaintiff's evidence which abrogated and superseded the written contract so as to release and discharge the defendant. It requires no citation of authorities to show

that a contract, whether written or verbal, may be discharged by a subsequent contract before performance. But the courts will not hold that an oral contract supersedes a former written one unless it appears that the second contract was intended to and did in fact take the place of and abrogate and supplant the first. [Proctor Coal Co. v. Strunk, 96 S. W. (Ky.) 608; McClurg v. Whitney, 82 Mo. App. l. c. 631.] Parties are always at liberty to adjust the details of transactions where they do not materially affect their vested rights under the contract, without abrogating the whole contract. [Davis v. Commonwealth, 30 L. R. A. (Mass.) 743.]

The real difficulty in this case is as to whether the written contract between the parties was rescinded or cancelled by what subsequently took place in the conversation between the parties during defendant's wheat harvest in June. The decision of the case turns on whether a new contract claimed to have been made at that time was actually consummated. A careful examination of what was said by the parties at this time leaves no doubt that the parties instead of abrogating the prior written contract for the monument fully recognized its binding force. The circumstances under which they met were that the plaintiff claimed that he had fully executed the contract so far as he was able and had in fact delivered the monument at the cemetery and he sought out the defendant in order to collect the amount claimed to be due and in the conference asserted that he had fully complied with his contract, or, if he had failed to do so, it was by reason of the fault of the defendant, and that he was then willing to make all proper amends. The position of the defendant was that plaintiff had not complied with his written contract in a manner satisfactory to him, but that if he would do so, defendant was ready to pay the stipulated price for the monument. Plaintiff's testimony was that one difference between them

was that the monument, as claimed by defendant, was delivered ''a little before he was ready to pick it,'' and to this plaintiff replied: ''Mr. Houser, you should have told me that before and we could have arranged it. We have no desire to set the monument up before you are ready, but the contract called for it to be set up and I didn't know when you were ready.'' It will be seen that this was a clear recognition of the binding force of the written contract, the controversy being as to whether plaintiff had really complied with the contract. The plaintiff also testified: ''We talked quite a while and he said he wanted the letters 'Wife of' on his monument. I said, 'You didn't say so and we didn't know you wanted it on. Otherwise we would have put it on. If that is all the matter, I will put it on. I will bring my lettering tools and put that on.' '' It will be seen from the written contract that defendant was to be notified before the lettering was done so that he might make a change if he saw fit. The above testimony shows that both parties recognized the binding force of the written contract and a willingness to comply with its terms. Plaintiff further testified: ''He also said in the conversation that the monument was not on his lot. I told him that we were not at fault. I said that I would bring the men over and put it on the lot.'' This is another recognition of the written contract and shows an attempt to carry out its terms instead of substituting a new one. Plaintiff also testified: ''He said, 'I want to put in a concrete curbing, and also a concrete foundation for the monument.' I told him to do that and we would come and set the monument on the lot.'' This was the original understanding between the plaintiff and the defendant at the time the original order was made and the evidence showed that it is usual when a monument is purchased for the seller to set it up in the cemetery in such a way that it will be permanent. Plaintiff further testified: ''In the meantime, he said

he didn't want to pay any interest. I told him that we would wait until fall and not charge him any interest. I showed him how to set the foundation so it would look well. He thanked me and said he was busy in the harvest and as soon as he got through he would write me and have me come to Wheaton. He said, 'All I want of you is to be responsible for the breakage and put the letters on it.' He said, 'I will write you in about two weeks.' He never notified me to come until along in the fall. I wrote him and he answered my letter. I wrote him and asked him if he was ready for me to come and do the lettering on the monument." The only appearance of any substantial change in the written contract was forbearance by the plaintiff in his agreement not to collect any interest until fall. The original contract provided that the purchase price was to be paid with interest at the rate of eight per cent per annum after delivery until paid. As to the agreement about interest at the wheat harvest conversation, it is sufficient to say that if defendant desires to avail himself of the remission of the interest he can raise the issue by a proper plea, and if he shows compliance on his part with his part of the contract he would be entitled to a deduction of the amount of the interest for the period agreed upon. [Sutter v. Raeder, 149 Mo. l. c. 309, 50 S. W. 813.]

Under the evidence the court should have overruled the demurrer. If, upon retrial of this case, the plaintiff shall be able to show that he complied with the terms of his written contract or that its performance has been waived by the defendant or such performance has been prevented by him, plaintiff will have made a prima facie case. It is ordered that the judgment be reversed and the cause remanded. All concur.