## JAMES ENGLAND, Appellant, v. L. F. HOUSER, Respondent.

Springfield Court of Appeals. February 24, 1914.

1. **CONTRACTS:** Modification or Rescission: Failure to Plead: Waiver. Where no modification or rescission of a written contract is pleaded by defendant such defense will be considered waived, even if there is some evidence incidentally introduced to this effect without objection.

2. **APPELLATE PRACTICE:** Former Decision: Failure to Amend to Comply With: Waiver. Where the appellate court on a former appeal decided that a certain defense could not be submitted to the jury on retrial unless pleaded and the defendant did not so amend before retrial he will be held to have waived same.

3. **CONTRACTS:** Variation: Materiality. Not every addition to or variation of a written contract destroys its validity and makes a new contract. Parties being always at liberty to adjust contract where their rights are not materially affected.

4. **INSTRUCTIONS:** Contracts: Variations: New Contract. An instruction is too broad and indefinite which told a jury to find that the parties made a new contract if they agreed on different terms and conditions than those in the old one with-

out telling them what new terms and conditions, if found, would amount to the making of a new contract. Whether a given change in the terms of a contract amounts to making a new contract is a question of law.

5. **CONTRACTS: In Writing: Binding Effect: Contemporaneous Oral Agreement.** A contract in writing signed by the defendant who knew its contents and binding effect, was cognizant that it contained a provision that "no verbal understandings or countermands" would be allowed, cannot be avoided merely on the ground that plaintiff's agent promised to erase and strike out all of the binding provisions of the contract.

6. **CONTRACTS: In Writing: Contemporaneous Oral Agreement: Not to Vary.** One cannot avoid liability on a written contract which he has signed by a mere showing that the other party to the contract agreed verbally that it would not be enforced.

7. **CONTRACTS: Verbal Merged in Oral: Breach of Verbal Not Fraud.** An oral agreement contemporaneous with a written contract covering the same matter is merged therein and a breach of such oral promise does not constitute fraud.

Appeal from Barry County Circuit Court.—*Hon. Carr McNatt,* Judge.

REVERSED AND REMANDED (*with directions*).

*Mayhew, Sater* and *Gardner* for appellant.

1. Where a business man possessed of ability and opportunity to know what he was signing, takes the word of an utter stranger as to the contents of the instrument without reading or having it read, and signs the same, he is careless and the court cannot be his guardian though the other party may be guilty of fraud. Breeder's Co. v. Wright, 134 Mo. App. 717; Horne Ins. Co. v. Winn, 125 Mo. App. 384; Breeder's Co. v. Wright, 139 Mo. App. 195; Phelps v. Jones, 141 Mo. App. 223. (2) Merely falsely representing to a man in possession of his faculties and able to read that a writing embodied their verbal understanding is not the fraud the law means. Mager v. Verity, 97 Mo. App. 486; Bank v. Hall, 129 Mo. 286; Zellar v. Ranson,

140 Mo. App. 220. (3) The court erred in admitting the testimony of defendant and his witnesses as to the oral agreement of Ollie England tending to impeach the contract sued on. · When a contract is reduced to writing the law presumes that the entire agreement was embodied in the writing and the same must stand as written. Kline v. Hedges, 229 Mo. 126; Barnard State Bank v. Fesler, 89 Mo. App. 217. (4) Instruction "A" is erroneous because it submits to the jury the issue whether the instrument sued on was a contract. Whether a writing is a contract is a question for the court. (5) Instruction No. "C" is an error. It submits to the jury the issue of modification of the contract sued on. This contention was decided adversely to defendant in a former appeal of this cause. England v. Houser, 163 Mo. App. 1, is the law of this case. (6) If defendant desired to rely on a subsequent parol modification or change of the written contract such modification should have been pleaded in the answer. Phillister v. Grove, 48 Mo. App. 460; England v. Houser, 163 Mo. App. 10; Kilerher v. Henderson, 203 Mo. 498; Helmouth v. Benoist, 144 Mo. App. 698; England v. Denham, 93 Mo. App. 13.

*J. S. Davis* for respondent.

(1) Defendant's plea amounts to a total failure of consideration; for the very inducement, the very cause that moved him to sign the paper was the promise that certain parts would be erased by plaintiff; this not done, it totally failed. Hall v. St. Joseph Water Co., 48 Mo. App. 363; Hill v. Meyer Bros. Drug Co., 140 Mo. 443. (2) Plaintiff not having declared on the modified contract, is not entitled to recover. Lanitz v. King, 93 Mo. 519; Link v. Vaughn, 17 Mo. 585; Schneider v. Patton, 175 Mo. 723; Harris v. Railroad, 37 Mo. 310; Bircher v. Boemler, 204 Mo. 563. (3) Plaintiff's petition and evidence standing as they did, the court should have sustained defendant's demurrer.

Phillips v. Mastbrook, 24 Mo. App. 129; Trimble v. Stewart, 35 Mo. App. 537; Edwards v. Albrecht, 42 Mo. App. 497; Whipple v. Cooper, 55 Mo. App. 554. (4) Plaintiff sues on the written order, and his evidence shows that he had no cause of action against defendant on that, but he did (likely) have a cause of action on a different contract; we insist that standing in this plight, he could not recover. Leslie v. Ry. Co., 88 Mo. 54; Reed v. Bott, 100 Mo. 66; Ischer v. St. Louis Bridge Co., 95 Mo. 268.

STURGIS, J.—1. The first appeal in this case is reported in 163 Mo. App. 1, (145 S. W. 514). It appears that the case was retried on the same pleadings as nothing is said in this record as to any amended pleading being filed. It will not be necessary to set out the pleadings or facts in full as the reader is referred to the former opinion. The suit is on a written contract-order signed by defendant, which is set out in the former opinion, for a tombstone to be placed at his wife's grave. The evidence for plaintiff on this trial is practically the same as before and shows the same state of facts recited in the former opinion. As the case at the first trial went off on a demurrer to plaintiff's evidence, the evidence of defendant was not then heard.

The case was reversed on the former appeal because the trial court wrongfully held that the evidence showed that the written contract sued on had been so changed as to make a new oral contract superseding the written one. This court then examined the evidence and held that it did not show any such new contract. It was then pointed out that no change of the written contract or substitution of a new one was pleaded and if, on a new trial, defendant wanted to raise this defense he should do so in his answer, citing Sutter v. Raeder, 149 Mo. 297, 309, (50 S. W. 813), where it is held that, where no modification or rescission of a

contract is pleaded by defendant such defense will be considered waived even if there is some evidence incidentally introduced to this effect without objection. [Kelerher v. Henderson, 203 Mo. 498, 512, (101 S. W. 1073), and Musser v. Adler, 86 Mo. 445, 449.] Defendant did not so amend his answer on this trial as to raise such issue and clearly ought to be held to have waived the same. [Merrill v. Central Trust Co., 46 Mo. App. 243.]

2. Nevertheless, we find the court gave this instruction: ''The court instructs the jury that if they find and believe from the evidence that plaintiff and defendant, on or about the —— day of June, 1909, and after they had discussed and adjusted some of the differences and misunderstandings which they had in regard to the matters in suit. And if you shall find that they agreed with each other on different terms and conditions than those expressed in the instrument sued on, thereby intending to make another and different contract from the one sued on, and to substitute such new contract for the one in suit, then plaintiff cannot recover in this action and your verdict must be for the defendant.'' The defendant did not introduce any evidence as to any change in the written contract or substitution of a new one. He still relies on plaintiff's evidence as so showing. He was denying that any contract was made at any time. According to his evidence there was neither an old or new contract made— neither an original or substituted one. We do not find that plaintiff's evidence is materially different in this respect than at the former trial. Under the above instruction the jury were allowed to find that the very things which this court said on the former appeal did not show or amount to a change of the written contract and substitution of a new one, did do so. The instruction is also too broad and indefinite to be a safe guide to a jury in permitting it to find that the parties ''agreed with each other on different terms and condi-

tions than those expressed in the instrument sued on, thereby intending to make another and different contract from the one sued on," without any directions as to what different terms and conditions, if found, would amount to a change of the old contract into a new one. This is no easy proposition to solve as is shown by the former appeal, where the trial court and this court differed very materially in this respect on the same facts. We cannot see that substituting the opinion of the jury for that of the learned trial judge on this matter has helped it any. As shown in the former opinion, it is not every addition to, or variation of, a contract that destroys its validity and makes a new contract. This court there said: "Parties are always at liberty to adjust the details of transactions where they do not materially affect their vested rights under the contract, without abrogating the whole contract. [Davis v. Commonwealth, (Mass.) 30 L. R. A. 743.]" The court then reviewed the matters severally, which then and now are urged as changing a written contract, and said of each: "This is another recognition of the written contract and shows an attempt to carry out its terms instead of substituting a new one." Such is the law of this case. What facts are sufficient to show a change amounting to a substitution of a new contract is a question of law. Where the facts tending to show the change are undisputed, the question is for the court. If the facts are disputed, then an instruction should set out what facts, if found, would amount to such a change of the old as to make a new contract and leave it to the jury to determine the existence or nonexistence of such facts, and not to determine both the law and the facts. What we said in Martin v. Railroad, 161 S. W. 631, 632, not yet officially reported, is applicable here with a slight change of the wording. The jury should not in a case like this be allowed to wander without chart or compass in search of a verdict and find a change of the contract on any theory

that might be suggested to or imagined by it, but, on the contrary, should be limited and required to find those facts which under the law constitute such a change of a contract as to amount to a new one, and which are within the pleadings and find support in the evidence. [Sommers v. Transit Co., 108 Mo. App. 319, 324, 83 S. W. 268; Casey v. Bridge Co., 114 Mo. App. 47, 65, 89 S. W. 330; Nagle v. Transit Co., 169 Mo. App. 284, 288, 152 S. W. 621; Allen v. Transit Co., 183 Mo. 411, 81 S. W. 1142; Duerst v. Stamping Co., 163 Mo. 607, 63 S. W. 827; Miller v. United Railways, 155 Mo. App. 528, 546, 134 S. W. 1045.]

3. A more serious question arises, however, on the validity and sufficiency of the defense pleaded and relied on by defendant and on which he doubtless won before the jury. The answer sets up as a defense for refusing to pay for the tombstone ordered and agreed to be paid for by defendant in writing, and which plaintiff manufactured and delivered at the cemetery designated, the following: ''Now at this day comes the defendant herein and for answer to plaintiff's petition denies each and every allegation therein contained, except that he signed the instrument sued on. Defendant further answering, states that his wife died on or about the —— day of ——, 1911; and within a day or so after her death plaintiff appeared at the home of defendant and solicited him to purchase a tombstone or rock for the grave of the deceased wife of the defendant; that defendant refused to purchase a stone at that time, and stated to plainiff that he did now know what kind of a stone that he would want and that he would not give plaintiff a contract for one; whereupon plaintiff falsely and fraudulently represented and stated to defendant that he wanted his post-office address and signature so that he could write him in due time and make inquiry of him as to his intentions about purchasing a stone and presented to defendant the instrument sued on for his signature;

whereupon defendant relying upon said false and fraudulent representations and statements of plaintiff as aforesaid, signed the instrument sued on with the express agreement and understanding then and there had with plaintiff that plaintiff would cross and mark out all that portion of said instrument in print above the signature of defendant, so that it would not be an obligation of defendant, and that plaintiff procured defendant's signature upon said agreement and understanding; that by reason of said agreement and understanding said instrument was never executed and delivered as and for the contract of defendant.''

The plaintiff first moved to strike out all this answer except the first paragraph on the ground that it states no defense and pleads an oral agreement in contravention of a written contract. This being overruled and excepted to, the plaintiff filed a general denial for reply. The defendant testified, over plaintiff's objection on the same ground, that plaintiff's agent came to his house in the country shortly after his wife died and solicited an order for a tombstone; that he told the agent he was not prepared and wanted to consult his children about it; that he was not able to buy then but as soon as he was able he would buy; (quoting) ''that he (the agent) got his plat book and began to show me and we ran over the monuments. He asked me if I did not think that would suit me and I told him yes. I depended on what it looked like when I saw it and he kept on talking and he wanted me to go into a contract and I told him that I did not want to. I wanted to see the monument before I went into a contract. He insisted on my calling the children and I called what were there, my daughter and daughter-in-law. They came out and looked at the design and they thought it would probably look all right so he wrote out what he called a contract and handed it to me and I read it and refused to sign it. I said that would bind me up and I am not ready to buy and don't want to

buy and he said for me to sign it. I said I might just as well give you my note in the first place. (Plaintiff objects to testimony for the reason that it tends to contradict and vary and alter the terms of a written instrument, and the contract provides that no verbal understandings or agreements are allowed and for the further reason that no fraud has been pleaded and the testimony shows none and answer was not verified. Objections overruled. Plaintiff excepted). He then agreed that he would scratch out all the binding part of the instrument that he gave me and he just wanted the price on about what we wanted so they might have it in stock when I came to Neosho, and anytime I was there I could drop in and if it suited me, they would sell it to me and I never thought but what he would, and I signed it. After that, my daughter and daughter-in-law went into the house.'' A duplicate copy of this contract was left with defendant and he had it when this suit was commenced more than a year later. On cross-examination, he testified: ''I got what he called a contract. At the time I signed it, I read it, that was why I objected to it. After I read it, I put my signature to it. . . . He told me he would mark out and he did not do that. I signed the order knowing his agreement that he would cross it out. Q. I believe on a former trial you testified that he told you he wanted your postoffice address? A. He did say he wanted to have this description of the monument and my address so he could write to me. Q. You thought then that the duplicate that you filed away and kept something like two years was your postoffice address, that is what you thought it was? A. Yes, of course. By the Court. At the time you signed it, Mr. Houser, had he written that pencil there about your wife's birth and death? A. No, sir; that was not there. Q. Was any of that pencil there? A. At the time he might have put her age and date she died, I did not give that to him. He got that from my daughter. Q. There was no pencil

writing then when you signed it    A.  Yes, sir; this upper part was, but the lower part was not, that part indicated was not there.  The inscriptions that should have been there, I did not give him there.  Q.  That $165, was that there when you signed it?  A.  I would not tell whether that was there or not, I do not remember.  I would not say that it was or was not, but I didn't know the exact price and he notified me and said he was going to sue me for $165.  Mr. Davis.  Q. What part of it were you objecting to?  Mr.  Sater. Plaintiff objects to that as tending to vary the terms of a written instrument, testimony shows that witness was capable of reading and he did read it, answer not sworn to contract provides that no verbal outside agreement shall enter into the contract in any respect, testimony shows no fraud at all.  Objection overruled, defendant excepts.  A.  I objected to all that that would make me buy the monument and he agreed to scratch it out.  Re-cross-examination.  Q.  So far as you know the only thing that has been put in the contract was the words 'Cynthia A. Houser, 1864-1908, and leave place for his at top?'  A.  I do not know about that.  If that was it, I do not know where he got it, I did not give it to him.  He said he would scratch it out, I don't know.''

The agent testified that the only part of the contract inserted after being signed was the date of the wife's birth and death, which he wrote in on this occasion and in defendant's house and by the authority and direction of the defendant; that the duplicate he gave him was an exact copy of the contract.

It is evident that the contract was made by filling out a blank form and that only the description of the monument and the inscription thereon, the dates, place and time of delivery, and the amount to be paid were written in pencil.  The evidence further shows that defendant was fifty-six years old, a well to do farmer,

a former judge of the county court and a man of more than average intelligence and business experience.

At the close of the evidence, plaintiff asked a peremptory instruction for judgment in his favor. He also asked and the court refused an instruction to the effect that a party is bound to know the contents of a writing signed by him and cannot be heard to say that a different understanding was had other than the plain language of the writing; that a failure to read or know all its terms does not affect his liability; that all conditions and understandings of the parties had or discussed at or prior to signing the contract are conclusively presumed to be merged in the writing and cannot be shown to annul its terms. The plaintiff also asked this instruction: "The court instructs the jury that it is admitted that the defendant signed the contract sued on, and in this connection you are instructed that if you find and believe from the evidence that the plaintiff did manufacture and letter said monument according to the terms of the contract read in evidence, and delivered said monument at the cemetery at Rocky Comfort, at the time said monument was contracted to be delivered, or within a reasonable time thereafter, then in that event the plaintiff is entitled to recover for same the contract price, together with eight per cent interest from the time of said delivery, and your verdict should be for the plaintiff." The court refused it as asked but modified and gave it with this addition: "Unless you further find that defendant was induced to sign contract by false and fraudulent statements made by plaintiff's agent, if you find such to have been made at the time of signing of said contract." These proceedings are mentioned more at length because of defendant's insistence that plaintiff by his conduct at the trial waived the point we are now considering—a question to be noted later.

It will be noted that the defendant admits that he read and fully understood the instrument he was sign-

ing—said it would be as binding as a note—knew that it contained the provision that ''no verbal understandings or agreements allowed and no countermands accepted.'' There is no claim and defendant does not rely on any trick, deception or fraud, other than the promise to erase the binding parts of the contract, being practiced in procuring the execution of the contract. There was no concealing, misreading or misrepresenting the contents. Defendant was not induced or misled into signing a contract different in its terms than he thought he was signing. He knew and understood what he was signing and the effect of it, but relied on a contemporaneous verbal promise that it would not be enforced. Is this a good defense?

We regret that learned counsel for defendant has not briefed this point, though it is well briefed by the appellant. Courts are and ought to be disposed to relieve parties who are defrauded or even over-reached in making contracts. The law abhors unfair dealing and it is a favorite maxim that fraud vitiates all contracts. But there are limits to this doctrine and its application to particular cases beyond which courts cannot go. In Manufacturing Co. v. Carle, 116 Mo. App. 581, 591, (92 S. W. 748), the court said: ''The exceptional instances in which a party escapes the consequences of his written obligation, are those in which, by some fraudulent contrivance, he is misled by the other party regarding the contents of the instrument, or where he was enfeebled by sickness and past understanding what he signed, or ignorant and unable to read the writing, or where some similar condition prevailed.'' Speaking of the evidence in that case, the court further said: ''But a study of Mrs. Carle's own testimony has convinced us that there is no substantial evidence of any fraud practiced by Dean to induce her to sign the order. He did not deceive her about its contents and she nowhere says that he did. The contract

178 Mo. App. 6

was spread before her when she signed it. Her con-
tention is that more goods were shipped than she and
Deane understood defendants were buying. She swore
she knew the order called for $180.60 worth of mer-
chandise, and justified her refusal to receive the goods
by saying that Deane understood she was only buying
twenty-five dollars' worth. This evidence has no tend-
ency to prove that Deane deceived her about the con-
tents of the instrument. It only tends to prove that she
and Deane had a verbal understanding and agreement
which differed from the written one. When scruti-
nized, the defense is seen to be an attempt to substitute
for the written agreement a verbal one; and this, of
course, cannot be done.''

In Crim v. Crim, 162 Mo. 544 (63 S. W. 489),
Judge Marshall said: ''The written contract is con-
clusively presumed to merge all prior negotiations and
to express the final agreement of the parties. To per-
mit a party when sued upon a written contract, to ad-
mit that he signed it, but to deny that it expressed the
agreement he made, or to allow him to admit that he
signed it, but did not read it or know its stipulations,
would absolutely destroy the value of all contracts and
negotiable instruments.'' [First National Bank v.
Wells, 98 Mo. App. 573   (73 S. W. 293); Bank v.
Birsch, 154 Mo. App. 631, 636 (136 S. W. 28).]   In
Tracy v. Union Iron-Works Co., 104 Mo. 193, 199, (16
S. W. 203), the court said: ''So, in private adjust-
ments of reciprocal rights, it is wisely considered that,
when parties have deliberately put their mutual agree-
ments into the form of a completed written contract,
that expression of their intention should be accepted
as a finality, in which is merged all prior negotiations
within the scope of the writing.'' In United Breeders
Co. v. Wright, 134 Mo. App. 717, 721 (115 S. W. 470),
the court said: ''The general rule is that parties to
such contracts are not permitted to go behind the writ-
ing. Everything pertaining to the subject-matter that

precedes the signing of the instrument must be regarded as being merged into the instrument. The cases in which this rule does not obtain are exceptional and consist of those instances where one of the parties, while acting as an ordinarily careful and prudent man in his situation would act, nevertheless, is misled to his detriment by some fraudulent trick or contrivance of the other party. As, for example, where a party cannot read or whose sight is defective finds himself in a position where he must rely on the other party correctly to read or state the contents of the instrument, and is deceived by a false reading or statement, or where he reads the contract and finds it to express the agreement, but the other party, by flim flam or deft manipulation of some kind, obtains his signature to another and different contract."

In considering this question the St. Louis Court of Appeals in Bradford v. Wright, 145 Mo. App. 623. 630 (123 S. W. 108), stated: "It is said the law will presume that a person will take care of himself. He cannot go abroad without thought, care or judgment relying on the law to guide and protect him in his dealing with his fellow man. The law will not relieve him because he has been credulous nor will the law care for one who will not care for himself." In Zeller v. Ranson, 140 Mo. App. 220 (123 S. W. 1016), the defense was that when the written order was signed, the agent taking the same promised and agreed that the goods ordered were not to be shipped until another member of the firm, not then present, consented; that this other member refused to consent and notice thereof was given to plaintiff. The written order was absolute and complete on its face and states, as does this one, that all the terms and conditions appear therein. The court held that this was no defense and that defendant's reliance on the promise and agreement of the agent, that the order would not be binding without and unless consent of the other member of the firm was obtained, is

not such fraud as annulled the contract.  The court further held that "the answer sets up no grounds for cancelling this contract on account of deceit or fraud," although the answer alleges: "That at the time the order was taken, it was agreed between Maggie Ranson and the plaintiffs' soliciting agent, J. B. Weil, that the order was taken for the convenience of the said agent, and was by him to be held for the consent and approval of Cleve Ranson, a copartner, and the business manager of the firm of M. Ranson & Son, who, at the time, was out of the city, and the goods were not to be shipped until thirty days after plaintiffs had been notified by letter that the said Cleve Ranson had ratified said order and consented to the purchase of said merchandise; that on the same day that the order was given, the said Cleave Ranson returned home and refused to ratify and approve said order, and that thereupon, in pursuance of such agreement, Maggie Ranson addressed and posted a letter to the plaintiffs at Chicago, Illinois, notifying the plaintiffs of the refusal of Cleve Ranson to ratify and approve the order and directing them to cancel the order."  The similarity of that case and this one is apparent.  The court there reversed the case and directed a judgment for plaintiffs.

In Copying Co. v. Muleski, 138 Mo. App. 419, 422, 423 (122 S. W. 384), the court said: "Defendant's answer was a general denial, though we gather from the record, brief and argument in this court that his defense was that at the time he signed the written contract it was understood and verbally agreed by him and plaintiff's agent that *that portion of the contract requiring defendant to purchase the stamps* of plaintiff and give them to customers *was to be erased* and was not to be a part of the proposition to be sent to plaintiff at the home office."  It appears the defendant offered an amended answer setting up this defense, which was stricken out.  As to this the court said:

"But however defendant may have been misled, the fact remains that the defense thus attempted is not allowed by the law. A contemporaneous agreement cannot be allowed to affect the writing. No fraud is charged and no reason suggested why the writing did not represent the agreement. It was defendant's duty to see that it did. [Johnson v. Insurance Co., 93 Mo. App. 588.]" As showing what view the court took of this defense in the case there cited, Johnson v. Insurance Co., the court said: "If a party is induced to sign a contract by fraud, he can avoid it for that reason. But it is clear that merely falsely representing to a man in possession of his faculties and able to read, that a writing embodies their verbal understanding is not the fraud the law means. If it was, then no written contract could stand against the assault of either party. He would only need to say that it did not contain the agreement; and not containing the agreement, it is fraudulent; and being fraudulent, it can not be enforced. Thus a writing would be mere waste material and all stability of contract be at an end." [See also Magee v. Verity, 97 Mo. App. 486 (71 S. W. 472).] Bass v. Sanborn, 119 Mo. App. 103, 107 (95 S. W. 955), is a suit on a note and the court there held: "Want of consideration, partial or total, may be shown. (Sec. 645, R. S. 1899). But it seems well settled that it is not permissible for the maker of a note to prove that though he executed the paper, it was, at the time agreed that he need not pay it. [Jones v. Shaw, 67 Mo. 667; Smith v. Thomas, 29 Mo. 307; Barnard State Bank v. Fesler, 89 Mo. App. 217.]"

Barnard State Bank v. Fesler, 89 Mo. App. 217, 226, holds that where plaintiff had executed three notes, he would not be allowed to prove that the payee had agreed at the time that if one of these should be paid, the others would not be enforced against the maker. [See also Wislizenus v. O'Fallon, 91 Mo. 184, (3 S. W. 837).] In Jones v. Shaw, 67 Mo. 667, an answer set-

ting up that plaintiff "requested defendant Shaw to execute a note to him for said $400 as a memorandum of the amount that he, plaintiff, had advanced to the defendant as aforesaid, and that said note was so executed at that time, not as an evidence of absolute indebtedness of defendant Shaw to said plaintiff, but as evidence of a contingent indebtedness in the event that the said copartnership should turn out prosperously; that said copartnership continued during the said packing season; that the same was not prosperous," was stricken out as constituting no defense, the court remarking: "To permit the defendants to show a contemporaneous parol agreement; that the note was only to be paid in the event the affairs of the copartnership should prove to be prosperous, would be to violate the well-established rule that oral testimony is inadmissible to vary or contradict the terms of a written instrument." In Loan & Trust Co. v. Workman, 71 Mo. App. 275 278, the court held that it was error to admit evidence by defendant "of an alleged oral agreement, which he claimed to have had with plaintiff's agent at the time and before the written contract was entered into—and to the effect that he, the defendant, was not to be bound by the terms thereof." The court saying that: "The purpose of the rule is then to take away the temptations for perjury, or even to avoid the result of a misunderstanding. 'Where parties have reduced their contract to writing, it will be conclusively presumed, in the absence of fraud, accident or mistake, that such writing includes the whole engagement and the extent and manner of the undertaking.' [Morgan v. Porter, 103 Mo. 135.]"

We must, therefore, rule that defendant has not shown any fraud in a legal sense—nothing that the court can recognize as a defense to this written contract. The golden rule is the best standard of fair dealing yet devised and its full observance is devoutly to be desired. No human court, however, is endowed

England v. Houser.

with that omniscience necessary to its compulsory en-forcement. To some extent it is found to be best for the courts to let the tares alone lest greater damage to the wheat be done by trying to remove them. [Math. 13: 28, 29.]

4. Seeing that plaintiff made his objection to this defense by moving to strike it out, by repeated objection to the evidence, and by instructions seeking to exclude it, it seems to us clearly wrong to hold that he has waived it. Plaintiff raised the question at the ear-liest practical moment by moving to strike out this de-fense from the answer and excepting to the court's re-fusal to do so. It is true that this motion and the court's ruling thereon and the exception are presented here as part of the record proper instead of being part of the bill of exceptions, but we cannot see how that impairs its value on the question of waiver. But, leav-ing that method of attack out of the question, the only basis for a waiver suggested is that when plaintiff and his agent, who made this contract, were being cross-examined, they were permitted without objection to answer as to promising and agreeing to erase the bind-ing part of the agreement. The agent denied making any such agreement and plaintiff denied having any knowledge of it. Plaintiff's attorneys doubtless knew that such would be their answers and that no evidence proving such defense would be elicited. It would also tend to prejudice the jury for plaintiff's counsel to in-terpose an objection to his own client and his agent answering such a question, and why object? Plain-tiff did promptly object and repeated the objection to the first and all the evidence *sustaining* this defense. He followed it up by asking a peremptory instruction in his favor, as well as by other instructions seeking to exclude this defense from the jury. He saved his ex-ceptions to all this and called the court's attention to each and all in his motion for new trial. Surely this is enough to save the point.

Where an objection has once been fairly made, overruled and excepted to, this need not be repeated every time the same point comes up under penalty of being waived. A party has a right to yield under protest, i. e., after saving an exception, and, where he does not invite the error, he may thereafter accept the court's ruling as the law of that trial and do the best he may to overcome his adversary in the mode of warfare and with the weapons held lawful by the court. [Bailey v. Kansas City, 189 Mo. 503, 513, (87 S. W. 1182).]

After having objected in vain to defendant being allowed to make a certain defense, plaintiff has a right to accept the court's decision as to the law and by cross-examination or with his own evidence do his best to weaken or overcome such defense. And being denied instructions on what he insists is the law on the facts proved, and when instructions given for his adversary, over his objection, adopt a different theory, he may ask instructions on such wrong theory, but more favorable to him, without it being a waiver. [Kenefick v. Fire Insurance Co., 205 Mo. 294, 308, (103 S. W. 957), and cases cited; Reynolds v. Publishers: George Knapp & Co., 155 Mo. App. 612, 621, (135 S. W. 103).]

5. The trial court held that there was no such failure of plaintiff to comply with the terms of the contract on his part as would defeat this action and to this we agree. The strict terms of the contract only require the monument to be delivered at the cemetery, though it is shown that plaintiff's failure to set it up at the wife's grave was due to the failure of defendant to be present and point out the location and it is unquestioned that plaintiff afterward offered to set it up at the grave and defendant refused to permit him to do so.

It results that, as was done in Zeller v. Ranson, 140 Mo. App. 220, (123 S. W. 1016), the judgment of

the trial court is reversed and the cause remanded with directions to enter judgment for plaintiff for $165, and interest from date of filing this suit.

*Farrington, J.,* concurs, *Robertson, P. J.,* dissents.