WILLIAM RATCLIFFE, Respondent, v. MISSOURI BENEFIT ASSOCIATION, Appellant.

**Kansas City Court of Appeals, November 2, 1914.**

CONTRACTS: Life Insurance: Employment: Commission.   The plaintiff sued to recover a commission of fifty cents on each life insurance policy written by him for the defendant association amounting to $180.   The defendant wrote him a letter setting forth the fact that they would pay him $50 per month and a commission of fifty cents on each policy, but the plaintiff never replied to it.   Finally the defendant called him to the home office and told him all about the reduction in the rates they were making and that the commission would be twenty-five cents on each policy.   *Held,* that where parties vary the original terms of the agreement by substituting something else for the whole or for particular parts of the agreement, the parts dispensed with are no longer any part of the agreement.   But where a written offer is orally modified before acceptance, the contract consists of the terms expressed in the offer as subsequently modified.

Appeal from   Clinton Circuit Court.—*Hon. A. D. Burnes,* Judge.

REVERSED.

*Frost & Frost* and *Martin E. Lawson* for appellant.

(1)   Instruction number 2 for the plaintiff is erroneous because it leaves the mixed question of law and fact to the jury to decide whether the terms mentioned in the letter of October 22, 1912, continued in force until November 29, 1913, and does not state under what conditions the so-called contract would continue or cease to continue.   This is improper.   Boot & Shoe Co. v. Bain, 46 Mo. App. 581; Estes v. Fry, 22 Mo. App. 80; Clem v. Railroad, 119 Mo. App. 245; Barton v. City of Odessa, 109 Mo. App. 76.   (2) The demurrer to the evidence should have been sustained,

because the entire evidence shows on its face that the plaintiff cannot recover because he went to work under an agreement to receive twenty-five cents for each $100 application for persons between the age of five and fifteen years, and that he accepted checks without protest for many months based on that rate and without complaining about them, and this, after he had once complained and had been told plainly that he would be paid on the changed rate. Acts may be as clear an indication of intent as words can be. 7 Am. & Eng. Ency. of Law (2 Ed.), 129.

*Darl B. Cross* and *R. H. Musser* for respondent.

JOHNSON, J.—Plaintiff sued in a justice court to recover a remainder due him for services rendered defendant under a contract of employment. Defendant does not deny that the services were rendered as alleged but claims the agreed compensation was paid in full. Defendant is a corporation engaged in a small way in the life insurance business with headquarters at Edgerton in Platte county. It issues policies for $100, $200 and $500, respectively, the premiums payable monthly, and accepts such risks on the lives of children over five years of age. One of the witnesses speaks of the business as "burial insurance." Plaintiff was a solicitor employed by defendant for about one year under an agreement that he was to receive a salary of $50 per month and a commission on each policy secured by him. The controversy which gave rise to this action is over the rate of commission plaintiff was to receive on each policy of $100 or $200 written on the life of a child between the ages of five and fifteen years. Plaintiff contends that the agreed commission was fifty cents on each policy of that class while defendant insists that it was twenty-five cents. It was agreed by the parties in the circuit court where the cause was tried on appeal that if the contract of

employment fixed a rate as stated by plaintiff he is entitled to recover $180 from defendant, and that if defendant's version of the contract is correct, plaintiff has been paid in full for his services and is not entitled to recover in any sum.

This issue was decided in favor of plaintiff in the circuit court and defendant appealed. The principal contention of counsel for defendant is that the evidence most favorable to plaintiff does not tend to support his claim to the larger commission and therefore that defendant's demurrer to the evidence should have been sustained.

The employment of plaintiff began November 1, 1912. Two weeks or more before that date the president of the company visited plaintiff who was at Wallace in Buchanan county, for the purpose of offering him employment. In the conversation that ensued the president told plaintiff the salary would be fifty dollars per month and in addition the company would pay certain commissions among which was a commission of fifty cents on each application for a $100 or $200 policy procured by plaintiff. This offer was "taken under advisement" by plaintiff who went to Holden to transact some business. While there he wrote to defendant requesting that an offer be made in writing. Under date of October 22, 1912, defendant answered by letter stating the terms of its offer including the payment of a commission of fifty cents on each $100 and $200 application. Plaintiff did not answer that letter and on October 26th defendant wrote him another letter as follows:

"We are getting out some new advertising matter, and making some material changes in our association, and it will be necessary for you to come to the office before beginning the work for our association, and Mr. McComas requests that you come to our office on Friday, November 1st, so that we can give you full instruction in reference to the work, and ex-

plain to you the changes that we have made. Hoping this will meet with your approval, we are,'' etc.

Plaintiff went to Edgerton in response to this letter and was informed that defendant had lowered the rate of premiums on $100 and $200 policies issued to children between five and fifteen years of age and the officers of defendant state they informed plaintiff that his commission on such applications would be twenty-five cents instead of fifty cents each as stated in the letter of October 22nd.

Plaintiff states that his visit to the office which covered practically the whole day was occupied with a ''rehearsal of the contract by which I was to work and I got instructions how I was to appoint collectors and what they were to have.'' We quote excerpts from his cross-examination: ''Q. Now when you were there Mr. Sturgis and Mr. McComas explained to you it was necessary to make a change in the rates because of a change in the rate of insurance, didn't they? A. Not on my part. Q. Did they say there or did you say anything about what you were to get for writing children between five and fifteen? A. I don't remember; if they did, I don't remember it. Q. You are positive that they did not say that? A. No, sir, I didn't understand them to be talking to me at all, because I had my contract.''

By the latter expression ''because I had my contract'' plaintiff refers to defendant's letter of October 22nd which he regards as constituting the entire contract between him and defendant and in which the rate in question was fixed at fifty cents for each application.

On December 5th, following this interview, defendant wrote plaintiff inclosing a statement of the commission account in which the rate of commission on the applications sent in by plaintiff belonging to the class in dispute was stated as twenty-five cents and a check was enclosed in settlement of the account.

Plaintiff cashed the check and wrote defendant claiming that the settlement should have been on the higher rate and requesting a remittance to cover the difference. Defendant, under date of December 16th, replied in a long letter repeating the oral agreement made at the office on November 1st, by which the rate was changed to twenty-five cents. Plaintiff did not reply to this letter and claims he did not receive it. He asserts that in the following February he visited the office and complained of not receiving the full commissions due him and was told to "go ahead and get the business, we will pay you."

All the monthly statements of commissions and accompanying remittances sent by defendant to plaintiff were on the basis of the lower rate. Plaintiff received these statements and cashed the checks without further protest but, as he states, with the mental reservation that he accepted them "on account and not in full settlement."

As to the conversation at the office in February, the president of defendant states that plaintiff, referring to the letter of October 22d, said: "You better take up this contract I have," to which the president replied "No, that isn't necessary because we understand each other. You have your statement and we understand each other all right."

We have not stated all the facts and circumstances in evidence but those we have mentioned are enough to show that the misunderstanding between the parties sprang from the mistaken view of plaintiff that the letter of October 22d constituted the entire contract, that it became effective as a contract before the visit of plaintiff to defendant's office on November 1st, and was not modified by the conversation held on that occasion.

The letter, as clearly shown by its contents, was nothing more than an offer of employment which could not ripen into a contract until its acceptance by plain-

tiff. His own testimony shows that he had not accepted the offer at the time he visited defendant's office in response to the letter of October 26th asking him to come and stating that important changes were being made of which it would be necessary to inform him. The contract, therefore, consisted of the terms stated in the letter of October 22d as modified in the oral agreement which accompanied its first acceptance by plaintiff. In effect the defendant said to plaintiff, "You have not accepted our written offer and we renew it with the exception that the rate of commission on applications for $100 and $200 policies on children between five and fifteen years will be twenty-five cents instead of fifty cents as stated in that letter," and plaintiff replied, "I will accept the offer in the letter as modified."

This is not an instance where a written contract is claimed to have been modified by a subsequent oral agreement. The rule in such cases is that "where the parties vary the original terms of the agreement by substituting something else for the whole or for particular parts of the agreement, the substituted things become a part of the agreement, and the parts dispensed with are no longer any part of the agreement." [Helm v. Wilson, 4 Mo. 41; Wood v. Stephens, 46 Mo. 555; England v. Houser, 163 Mo. App. 1.] But this is a case where a written offer is orally modified before its acceptance, in which case the contract consists of the terms expressed in the offer as subsequently altered. Under the facts as disclosed by plaintiff himself the burden was not on defendant to prove that the written offer had been subsequently changed by oral agreement but was on plaintiff to show that at the time of his acceptance the terms of the final agreement allowed him the higher rate. His testimony on this point is most unsatisfactory and when rightly analyzed amounts not to a denial that defendant did tell him the rate of commission would be lowered to twenty-five

cents but to a belief on his part that the rate was unalterably fixed in the letter and would not be affected by the declaration of defendant of a purpose to change it. Considering the importance of the subject to him and the fact that he had been summoned to the office to receive advice of important changes, his statement on the witness stand that he did not remember whether or not anything was said about lowering the rate "because I had my contract" is a substantial admission that the declaration of a change was made by defendant and that plaintiff thought he could ignore it and still claim the compensation provided in the written offer. There is no substantial evidence of the existence of a contract for the higher rate and it follows that the judgment must be reversed.

All concur.